BENJ. R. HADDOCK, Respondent, v. SALT LAKE CITY, Appellant.

ACTION FOR SERVICES—ANSWER—ILLEGAL CONTRACT.

Plaintiff alleged that defendant agreed to pay him certain sums for serving summonses and executions in actions by defendant to collect poll taxes. *Held*, that it was error to refuse to allow defendant to file an amended answer setting up the contract between the parties, which was void as against public policy, on the ground that the answer set up no defense.

Baskin, J., dissenting.

Decided June 11, 1901.

Appeal from District Court, Salt Lake County.—*Hon. A. N. Cherry*, Judge.

Action by Benjamin R. Haddock against Salt Lake City. From a judgment in favor of plaintiff, defendant appeals.

REVERSED.

The plaintiff brought this action to recover of the defendant $422.28 for services alleged to have been performed for it by him as constable. It is alleged in the complaint, substantially, that between June 10 and September 14, 1899, the plaintiff served two hundred and eighty-seven summonses and twelve executions in cases wherein Salt Lake City, the defendant herein, was plaintiff; that in those cases the actions were instituted by Salt Lake City for the purpose of recovering poll taxes; that the labor performed in making service of said summonses and executions was performed by plaintiff at the request of defendant; that defendant agreed to pay plaintiff for said labor the sum of $1.40 for making service of each

summons, and the sum of $2.20 for service of each execution; that said amounts are reasonable fees for performing said labor; that plaintiff is entitled to said amounts by law; and that there is due on account of said services $422.78.   To this complaint the defendant filed a general denial, and thereafter, before trial, asked leave to file an amended answer, in which was pleaded a written contract relating to the services sued for, which contract reads: "This agreement made and entered into this sixteenth day of January, 1899, by and between Salt Lake City, a municipal corporation, by S. M. T. Sedden, street supervisor, party of the first part, and Benjamin R. Haddock, constable of the Third precinct, Salt Lake City, in the county of Salt Lake and State of Utah, party of the second part, witnesseth: That the party of the first part hereby employs the party of the second part to make service of a number of legal processes in cases where Salt Lake City brings suit against certain persons for delinquent poll tax, and agrees to pay him therefor as hereinafter set forth in this instrument.   The party of the second part agrees to make service of all of such legal processes as the party of the first part shall desire, and agrees to accept as payment for his services for so doing the regular fee provided by law in civil cases: provided, however, that, in case the party of the first part be unable to recover the amount of the poll tax for which the action is brought, then in all such cases party of the second part is to receive no compensation whatever for the services of such process in such cases.   Payment for said services is to be made only after the amount of said poll tax has been collected.   In witness whereof, we have hereunto set our hands this sixteenth day of January, 1899.   Signed in the presence of S. M. T. Sedden.   J. T. Raleigh.   Benj. R. Haddock."   It was also averred in the proposed answer that, in pursuance of such agreement, plaintiff served process in certain suits brought by defendant; that defendant made diligent efforts to collect the

amount of poll tax involved in such suits; that, in all cases where collections had been made, defendant had paid the plaintiff the regular legal fees in accordance with the terms of the contract; and that, if any of such services were not paid for, it was where collections had not been made. The court refused to permit the amended answer to be filed, not on account of the exercise of any discretion as to "its not being presented in time, but purely on legal ground that it constituted no defense." Thereupon the defendant made application to file a second amended answer, which contained the same allegations as the first one, with the further averments that on or about January 16, 1899, the plaintiff proposed to the defendant that, if it would permit him to make service of a large number of writs of process in poll-tax cases, he would enter into and be bound by the contract hereinbefore set forth; that all process served and sued upon was served pursuant to said contract; that plaintiff is limited in this action for recovery to the contract which he actually entered into; that said contract is void as against public policy, being an arrangement for the payment of fees different from that provided by statute; and that, being so void, the plaintiff is not entitled in law to recover upon a *quantum meruit* or upon any other cause of action whatever for such services rendered. At the trial the defendant offered the contract in evidence, for the purpose, among other things, of showing that the suit was founded on an agreement which was illegal and void as against public policy, and also offered other evidence in bar of the action, all of which, including the contract, was held inadmissible on the ground that it was incompetent, irrelevant, and immaterial. Upon the submission of the case to the jury a verdict in the sum of $433.82 was rendered in favor of the plaintiff, and judgment was entered accordingly. This appeal is from the judgment.

*Messrs: F. B. Stephens* and *C. B. Stewart* for appellant.

---

---

*Messrs. Wilson & Smith* for respondent.

After a statement of the case as above, BARTCH, J., delivered the opinion of the court.

The appellant contends that the court erred in its action respecting the amended answer and the proof offered in bar of the action, and we are of the opinion that this contention is well founded. It is true, the contract in question is not specifically referred to or set forth in the complaint, but it is alleged in the complaint that the "defendant agreed to pay the plaintiff" certain specified sums for serving summonses and executions in actions instituted by it for the purpose of recovering poll taxes due and owing it. The allegations are such that the defendant might well assume that the suit was based on the contract. Especially is this so since the services referred to in the complaint, and the prices therefor, are identical with those which formed the subject of the contract. It is admitted on both sides that the contract contravenes public policy and is illegal and void. It contains a different arrangement for the performance by and payment for services of a public officer than that prescribed by the statute in relation to fees. Both parties to the contract were parties to the illegal arrangement, each having entered into it voluntarily, without undue influence or coercion; and therefore both are *in pari delicto,* and the law leaves them where it finds them. Each party under such circumstances being a *particeps criminis,* neither will be aided, either in law or equity, to enforce the contract, or profit by the unlawful transaction. The general rule undoubtedly is that courts will not interpose to aid parties concerned in unlawful transactions or agreements. If such contract is executory, its performance will not be enforced; if executed, the parties will be permitted to remain where they are found. This is doubtless the result of the rule in all cases where each party to the unlawful agreement or immoral trans-

action acted voluntarily, and public interests and justice require no relief to be given. In such a case, upon suit brought to enforce the contract, the defendant may allege and prove its illegality or immorality in bar of the action. This is permitted, not for the sake of the defendant, but upon the general principles of public policy, to discourage corrupt and illegal agreements, by holding them void and refusing any judicial aid between the parties to the illegal or corrupt transaction. This rule is expressed in the maxim, *"Ex turpi causa oritur actio."* The objection thus made by plea in bar is rather that of the public, speaking through the courts, than of the defendant as a party to the illegal or corrupt agreement. Such is evidently the weight of authority at present upon the subject. "The old cases," says Mr. Justice Story, "often gave relief, both at law and in equity, where the party would otherwise derive an advantage from his iniquity. But the modern doctrine has adopted a more severely just, and probably politic and moral, rule, which is to leave parties where it finds them, giving no relief and no countenance to claims of this sort. 1 Story, Eq. Jur., sec. 298, note 2. "The courts of justice," says Chancellor Kent, "will allow the objection that the consideration of the contract was immoral or illegal to be made even by the guilty party to the contract; for the allowance is not for the sake of the party who raises the objection, but is grounded on general principles of policy." 2 Kent, Comm., 467. Lord Mansfield, in Holman v. Johnson, 1 Cowp. 341, said: "The objection that a contract is immoral or illegal as between plaintiff and defendant sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this: *'Ex dolo malo non oritur actio.'* No court will lend

its aid to a man who founds his cause of action upon an immoral or illegal act.   If, from the plaintiff's own stating or otherwise, the cause of action appears to arise *ex turpi causa,* or the transgression of a positive law of this country, there the court says he has no right to be assisted.   It is upon that ground the court goes, not for the sake of the defendant, but because they will not lend their aid to such a plaintiff.   So, if the plaintiff and defendant were to change sides, and the defendant was to bring his action against the plaintiff, the latter would have the advantage of it; for, where both are equally in fault, *'Potior est conditio defendentis.'* "   In Hope v. Association, 58 N. J. Law, 627, 34 Atl. 1070, 55 Am. St. Rep. 614, Chancellor McGill said:   "It appears to me to follow from this view of the foundation of the rule with respect to illegal and corrupt contracts that the policy which constrains the courts to deny all relief to the parties demands that, when either of those parties shall offer to show that the cause of action springs from an illegal or corrupt agreement, the courts shall admit and consider the legal proofs offered to that end. It certainly does not further the salutary effect of the rule that neither party will be aided by the courts, or satisfy as to its impartiality, to exclude proof of some of the facts essential to show the entire transaction, and thus exhibit its illegality, merely because they are offered by a *particeps criminis* against whom a prima facie case is made by one equally corrupt, who has gained an advantage by presenting to the court garbled and partial proofs, which suppress part of the truth, and impose a mutilated state of facts upon the court in place of the real transaction."   So, in Inhabitants of Worcester v. Eaton, 11 Mass. 368, Mr. Chief Justice Parker, after a review of a number of cases, said:   "It appears, then, to be the settled law in England, and we are satisfied that it is also the law here, that where two parties agree in violating the laws of the land the court will not entertain the claim of either party against

the other for the fruits of an unlawful bargain.   If one holds the obligation or promise of the other to pay him money or do any other valuable act on account of such illegal transaction, the party defendant may expose the nature of the transaction to the court; and the law will say, 'Our forms and rules are established to protect the innocent and to vindicate the injury, not to aid offenders in the execution of their unjust projects;' and if the party who has foolishly paid his money repents his folly, and bring his action to recover it back, the same law will say to him, 'You have paid the price of your wickedness, and you must not have the aid of the law to rid you of an inconvenience which is a suitable punishment of your offense.' " In Sullivan v. Horgan, 17 R. I. 109, 20 Atl. 232, it was said: "Although a contract thus infected with illegality is regarded in law as a nullity, in so far that the law will not lend its aid to enforce it, it is nevertheless not treated as if it had no existence in fact." Likewise, in Harvey v. Tama Co., 53 Iowa 228, 5 N. W. 130, it was said: "The plaintiff cites many cases wherein a party sued upon an agreement has been permitted to show its illegal or immoral character in defense to the action.   That a defendant should be allowed to make such defense follows from the rule that the law leaves parties to an illegal contract where it finds them, and extends no aid to either."   In Tappan v. Brown, 9 Wend. 175, Mr. Justice Nelson, speaking for the court, said:   "It is equally clear to me that the appointment of the plaintiff to the office of deputy is so connected and interwoven with this corrupt agreement that it is impossible for the court, upon any sound construction, to separate them.   The one was the consequence of the other, and so understood and intended by both parties; and to permit the plaintiff to recover the statute compensation would be only disaffirming a part of the illegal agreement, and confirming the residue.   It would be confirming the defendant's part of it, to-wit, the appointment, and disaffirming the plaintiff's, to-

wit, that part which secured the reward for the office. I do not say that one part was the consideration for the other, technically speaking, but the whole was one entire arrangement, and if one part is void the whole must be. The parties are therefore *in pari delicto,* and the law will help neither." 15 Am. and Eng. Enc. Law, 933-939; Wooden v. Shotwell, 23 N. J. Law 465; Willemin v. Bateson, 63 Mich. 309, 29 N. W. 734; Nellis v. Clark, 20 Wend. 24; Smith v. Hubbs, 10 Me. 71; Harrison v. Hatcher, 44 Ga. 638; Church v. Muir, 33 N. J. Law, 318; Short v. Mining Co., 20 Utah 20, 57 Pac. 720, 45 L. R. A. 603; Gorringe v. Read (Utah), 63 Pac. 902; Marlatt v. Warwick, 19 N. J. Eq. 439; Bowman v. Phillips, 41 Kan. 364; 21 Pac. 230, 13 Am. St. Rep. 292; White v. Hunter, 23 N. H. 128; Vulcan Powder Co. v. Hercules Powder Co., 96 Cal. 510, 31 Pac. 581, 31 Am. St. Rep. 242; Ruckman v. Bryan, 3 Denio 341; Church v. Proctor, 13 C. C. A. 426, 66 Fed. 240; Howell v. Fountain, 3 Ga. 176, 46 Am. Dec. 415; Gunderson v. Richardson (Iowa), 8 N. W. 683; Gleason v. Railroad Co., (Iowa), 43 N. W. 517; Richardson v. Buhl, 77 Mich. 632, 43 N. W. 1102; Birkett v. Chatterton, 13 R. I. 299, 43 Am. Rep. 30; Spalding v. Ewing, 149 Pa. 375, 24 Atl. 219, 15 L. R. A. 727, 34 Am. St. Rep. 608; Peck v. Burr, 10 N. Y. 294; Brooks v. Cooper, 50 N. J. Eq. 761, 26 Atl. 978, 35 Am. St. Rep. 793.

From the foregoing considerations, it is evident that the appellant had the right to plead and prove the illegal contract, and that the respondent has shown no right of recovery, either in law or equity, for any services rendered in the pursuance of such contract, or embraced within it. Since, however, the length of time during which the contract was to continue is not specified therein, as will be noticed by reference to its terms, and as counsel for the respondent claim, although without satisfactory proof thereof, that the services sued for were performed independently of the contract, and insist that they

are not included therein, a new trial may be granted, with privilege to both parties to so amend their pleadings as to permit the exact transaction to be shown in evidence. The case is therefore reversed, with costs, and the cause remanded, with directions to the court below to grant a new trial and proceed in accordance herewith.

*Miner, C. J.,* concurs.

BASKIN, J. *(dissenting).*—Under the provisions of section 648 of the Revised Statutes, it was the mandatory duty of the respondent, as constable, to serve and return the summonses and executions directed or delivered to him by the justice of the peace; and if he had refused to perform that duty, in the absence of any legitimate excuse, he would have been amenable to the justice therefor. The fact that the contract which the respondent entered into with the city was void, as against public policy, did not, therefore, deprive him of the right to recover the fees allowed for serving the summonses and executions directed or delivered to him by the justice of the peace.