CHARLES M. DULL, Respondent, v. THE MAMMOTH MINING COMPANY, a Corporation, and SAMUEL McINTYRE, Appellants.

No. 1590.    (79 Pac. 1050.)

**Court Stenographers: Extra Fees: Contract: Public Policy.**
One appointed court stenographer, though for a single case only, by the judge, under Sess. Laws 1899, pp. 111, 112, c. 72, is in the discharge of his duties a public officer, so that the contract of the parties to pay him more than provided by the statute for transcribing the testimony is void, as against public policy.[1]

(Decided March 10, 1905.)

Appeal from the Third District Court, Salt Lake County.—*Hon. T. W. Stewart*, Judge.

Action to recover a certain sum alleged to be due for services rendered in reporting and transcribing the proceedings upon the trial of an action. From a judgment in favor of the plaintiff, the defendants appealed.

REVERSED.

[1] Haddock v. Salt Lake City, 23 Utah, 521.

*Andrew Howat, Esq.,* and *Geo. Y. Wallace, Jr., Esq.,* for appellants.

But if it were true that the contract to pay fifteen cents a folio for a transcript of the testimony had been made either with McIntyre or through Mr. Zane and the same had been authorized by the Mammoth Mining Company, yet it was a contract against public policy and void, because it was an agreement to pay to the official stenographer of the court an amount for his services in transcribing the testimony in excess of that provided by law, and the fact that the Mammoth Mining Company had agreed to pay him a dollar a day in excess of what was provided by law for his attendance in court and that he had in fact paid Mr. Dull a bill rendered for services, which was in excess of that allowed by law, does not in any way preclude the defendant from setting up by way of defense the fact that the agreement sued upon as the basis of recovery was against public policy and void. There can be no ratification of an agreement, which is against public policy, and the sole question under this head is whether the agreement was one that was enforcible. Mr. Dull was appointed the official stenographer of the court; he received from the county as such official stenographer $184.00, being 23 days at $8 a day. This he was entitled to receive only because of his being the official stenographer of the court. If he had simply been hired by the parties under an agreement between themselves that he should report the case and that his transcript of testimony should have all the force and effect of that of an official stenographer, the case might be different, but he was not hired as a private individual by the parties, but he was appointed official stenographer of the court, and the fact that his term as official stenographer should last only during the trial of the case, does not alter the fact that he was the official stenographer of the court, or in any way change his relation to the case.

It appears from the testimony of Judge Higgins

that he wrote to Mr. Dull suggesting that he would appoint him as the official stenographer to take the testimony in that case. And on the 7th of November, 1900, the court in which the suit was pending entered an order in the case pending appointing the plaintiff as official stenographer of the court and a bond was given by Mr. Dull as such official stenographer. The contract for the increased compensation recites as follows: "In view of the order entered in the above case appointing C. M. Dull reporter, it is hereby stipulated," etc. So that we find Mr. Dull appointed by the court as official reporter, giving his bond as such; the contract made with reference to his additional compensation reciting that he had been appointed official reporter, and he received from Juab County $184 as compensation for his services as official reporter for 23 days' work in reporting the case. He cannot now be heard to say that he was not the official reporter. Buck v. City of Eureka (Cal.), 42 Pac. 243.

The Statutes of 1899, chap. 72, provide the compensation that the official reporter of the court shall receive, namely: $8 a day for taking testimony in court and eight cents per folio for transcribing testimony at the request of either party. Now can the court reporter enter into a valid contract with the parties by the terms of which they agree to pay him fifteen cents a folio for transcribing the testimony instead of eight? We believe that such a contract is not a valid one and cannot be enforced in a court of law.

This very question arose in the case of McCarty v. Bonynge, 12 Daly (N. Y.), 356.

*Messrs. Dickson, Ellis, Ellis & Schulder* for respondent.

The appellants further object, however, that no matter how clearly it might be established by the evidence that the attorneys for the respective parties had agreed that the plaintiff herein should have fifteen

cents per folio for transcribing, and $10 per day for reporting, that such an agreement on the part of the attorneys was beyond the scope of their authority and not binding upon the parties litigant. We are not referred, however, by counsel to any authority in support of the proposition thus announced by them.

In opposition to this contention, we direct the attention of the court to the 3rd Am. & Eng. Ency. of Law (2 Ed.), on the subject of "Attorney and Client." At page 375, it is said: "It is always presumed that an attorney appearing and acting for a party to a cause has authority to do so and to do all other acts necessary or incidental to the proper conduct of the case, and the burden of proof rests on the party denying such authority to sustain his denial by a clear preponderance of the evidence." And at page 357: "A litigant is entitled to appear for himself or by attorney in any cause in which he has a personal interest, but if he elects to appear by attorney he thereby waives all right to control the conduct of the case, and confers exclusive power in respect thereto upon his attorney; this being true, the court cannot recognize, nor can the opposite party claim to act upon, any stipulation made by the litigant or any step in the cause taken by him, unless it is done with the express assent of his attorney of record. The attorney's right of control over all matters relating to the conduct of the case in the court is exclusive, and cannot be interfered with." And again, at page 353, "Subject to the rule that an attorney cannot compromise his client's case, any agreement or stipulation which appears in the progress of a cause to be necessary or expedient for the advancement of his client's interests, may be made for his client by an attorney; and this right, it seems, is exclusive so far as it applies to stipulations relating purely to the management of the case in court." And at page 370: "In all civil actions, an attorney has an implied power to submit his client's matters in controversy to arbitration; such power is embraced in the general authority conferred by the re-

tainer." And again at page 347: "An attorney is not a mere agent; his powers are larger and more extended, and in respect to the conduct of a suit in court are absolute, so long as no substantial right of the client is surrendered." See also, Monson v. Hawley, 30 Conn. 51; Levy v. Brown, 56 Miss. 89; Board of Commissioners v. Younger, 29 Cal. 147; Bonnefield v. Thorpe, 71 Fed. Rep. 624 (read p. 929); Moulton v. Bucker, 115 Mass. 36.

And in the concluding paragraph of note 3 on the last page of the Encyclopedia cited, we find the following:

"Services of Stenographers: An attorney has implied authority to contract for the services of a stenographer, necessary in taking depositions or any other matters connected with the conduct of the case." See also, Patty v. Edward G. Hilton, 64 How. Pr. (N. Y.) 199.

We concede freely that a public officer, whose compensation, or fees, are prescribed by law, cannot enter into a contract by which he is to receive, for the performance of the official duties imposed upon him, any extra compensation. But we insist that, even, the regular official stenographer of the several district courts is not an officer at all. He is not appointed by the executive, legislative or judicial department of the government. He is, under our statute (see Session Laws of 1899, page 112, sec. 2), employed—contracted with—by the judge of the court, to perform certain duties. The terms which said contract shall contain are specified in the section above referred to. One who contracts with the government, or any department thereof, to render certain stipulated services for a stipulated price or consideration, is not an officer within the meaning of the law.

In the case of the U. S. v. Maurice, 2 Brock. 103, Chief Justice Marshall defines what he understands an office to be, as follows: "It is a public charge or employment, and he who performs the duties of the office

is an officer. If employed ·on the part of the United States, he is an officer of the United States. Although an office is an 'employment,' it does not follow that every employment is an office. A man may certainly be employed under a contract, express or implied, to do an act or perform a service, without becoming an officer." See also, Bunn v. People, 45 Ill. 397.

In McDaniel v. Yuba County, 14 Cal. 444, it is said: "The distinction is very apparent between an officer constituted by legislative act, and a contract made with a party to render for a stated period certain services, though these services are to be rendered in a capacity in the nature of a public office or appointment."

In the case at bar, however, the plaintiff was not the regular stenographer of the Fifth Judicial District Court; he was not contracted with by the judge of said court, in accordance with the provisions of section 2 of the Laws of 1899, supra. The facts were, as already shown, that the regular stenographer of the court was not competent to report such a case as that of the Grand Central-Mammoth; that the attorneys for both sides of the case were anxious to secure the services of the plaintiff as the reporter in that case; that they were willing to pay him extra compensation, providing they could secure his services; and that the judge of the court was aware of all these facts, and the order appointing him confines his appointment as stenographer to that special case. One thus employed to perform a special act, such as this, cannot be treated as an officer. The term "office" implies duration of employment—not merely a temporary employment in some one particular matter. In U. S. v. Hartwell, 6 Wall. 385, it is said: "An office is a public station or employment conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument and duties. A government office is different from a government contract. The latter, from its nature, is necessarily limited in its duration, and specific in its objects; the terms agreed upon define the rights and obligations of both parties, and

neither may depart from them without the assent of the other.''

In Bunn v. People, 45 Ill. supra, it is said: ''A person employed for a special, single employment, in whose employment there is no enduring element, nor designed to be, and the completion of whose duties, although years be required for their performance, *ipso facto* terminates the employment, is not an officer. See also the opinion of the Judges in 3 Greenleaf (Me.) 481.

See also Mechem on ''Public Offices,'' sec. 5, where it is said: ''Office is created by law, and not by contract.'' And sec. 8, where it is said: ''The term 'office' embraces the idea of tenure and duration, and certainly a position which is merely temporary and local cannot ordinarily be considered an office.'' And section 3, where it is said: ''An office also differs from a contract, for, as has been said, 'the latter, from its nature, is necessarily limited in its duration and specific in its objects; the terms agreed upon define the rights and obligations of both parties, and neither may depart from them without the assent of the other.'' See also, Hall v. Wisconsin, 103 U. S., p. 5.

The definitions given in the foregoing authorities of an ''office'' within the meaning of the law, have been adopted by this court. See McCornick v. Thatcher, 8 Utah 294, where the court say, at page 300: ''It will thus be seen that the trustees are charged with important public duties affecting the people of the whole territory; that they are clothed with important powers; and that their duties are of a continuing nature, of indefinite duration, and that they have a fixed compensation for their services. They are, therefore, officers, according to the accepted definition of that term.'' See also, People v. Nichols, 52 N. Y. 478.

Judge Platt, in re Attorneys, 20 J. R. 492, defines the legal meaning of the term office to be, ''An employment on behalf of the government in any station or public trust, not merely transient, occasional or incidental.''

See Sawyer v. Corse, 17 Grattan 230; s. c., 94 Am. Dec. 445; State v. George, 22 Ore. 142, s. c., 2 Am. St. Rep. 586; David v. Portland Water Committee, 14 Ore. 98; Matter of Hathaway, 71 N. Y. 238.

Again: It is manifest that the employment or contract of the plaintiff by the court, to report the Grand Central-Mammoth case, was not an employment or contract, or intended so to be, under chapter 72, page 112, section 2 of the Session Laws of 1899, for there is nothing but an order appointing—there is no contract whatever, nor was it intended by the plaintiff, the court, or any of the parties to the action, that there should be any contract, such as is provided for in said section 2, entered into between the judge of the court and the plaintiff.

### STATEMENT OF FACTS.

Plaintiff brought this action to recover from defendants the sum of $627.40, a balance alleged to be due him for services rendered the defendants in reporting and transcribing the testimony and proceedings had upon the trial of a certain action entitled "The Grand Central Mining Company v. Mammoth Mining Company." One of the defenses pleaded by defendants was that the contract upon which plaintiff relied for a recovery is against public policy and void. Judgment was rendered in favor of plaintiff, and defendants appeal.

It appears from the record that in November, 1900, said action was pending in the Fifth Judicial District Court. The case was one of considerable magnitude, and it was known to the judge before whom it was about to be tried and to the litigants that it would be a difficult case to report, and that the trial, in all probability, would occupy several weeks. The regularly employed official stenographer of the court did not think himself competent to take and transcribe the testimony as the exigencies of the case required, and the judge appointed plaintiff as court stenographer to report the case, and

made the following order, which was entered of record:

"In the District Court of the Fifth Judicial District, State of Utah, County of Juab. Saturday, Nov. 7, 1900. Appointment of Official Stenographer. Now on this day the court appoints C. M. Dull, Esq., of Salt Lake City, Utah, as official stenographer in the above case."

Before this appointment was made, it was agreed and understood between the plaintiff and the parties to the action that plaintiff should be paid $10 per day for reporting the testimony, and fifteen cents per folio for transcribing the same in typewritten form. After the foregoing order was made by the court appointing plaintiff official stenographer of the court to report the proceedings, the following stipulation in writing was entered into by counsel for the respective parties (omitting title):

"In view of the order entered in the above case appointing C. M. Dull reporter, it is hereby stipulated that said reporter shall receive as compensation ten dollars per day for reporting and fifteen cents per folio for transcript furnished each party, and one-half this rate of fifteen cents per folio for second copies furnished either party. John M. Zane, Dickson, Ellis & Ellis."

The maximum fees allowable by law for reporting and transcribing court proceedings were $8 per day for reporting, and ten cents per folio for transcribing. The per diem of $8 allowed by statute for reporting in civil cases was a charge against the county in which the trial was had, but the fees for transcribing were paid by the party ordering the transcript. Plaintiff, in pursuance of the order made by the court appointing him official stenographer, and the agreements mentioned, filed his bond as said stenographer, and entered upon the duties of his office, and reported the proceedings in the case. At the conclusion of the trial, which lasted 23 days, plaintiff presented a bill of $8 per day, amounting to $184, to Juab county, which claim was accepted and paid by said county. The defendant Mammoth Mining Com-

pany paid plaintiff the statutory fees for the transcripts ordered by it, but refused to pay the five cents per folio agreed upon in excess of the compensation fixed by law.

McCARTY, J., after stating the facts, delivered the opinion of the court.

The first question presented for our consideration by this appeal is, was respondent, while in the discharge of the duties imposed upon him as offical stenographer a public officer? We think this question must be answered in the affirmative. The statute provides that "the judge of a district court may employ and contract with a stenographer to report the proceedings of such court in the manner and under the limitations" therein provided. The statute prescribes the duties of the stenographer, and further provides that his fees shall not exceed $8 per day for reporting, and ten cents per folio for transcribing the testimony taken. Sess. Laws Utah 1899, pp. 111, 112, c. 72. The statute also provides that the stenographer shall be paid his per diem and mileage out of the public treasury. His contract is made with the judge, who acts in this matter for the State, and the State only, and not in any sense as a private individual. The acts of the stenographer in the performance of his duties are official in character, and his stenographic notes are filed with the clerk of the county in which the services are performed, and become a part of the public records. The respondent in this case, in pursuance of the statutory provisions referred to, presented a claim to Juab county for the per diem allowed by law for reporting the case mentioned, which claim was paid by said county. The fact that respondent was appointed for the purposes of the one case only constituted him no less a public officer than if he had been appointed to serve during the pleasure of the judge who made the appointment. Throop on Public Officers, section 3; Mechem on Public Officers, section 8. Respondent, having accepted the appointment of official stenographer,

and received from Juab county the per diem allowed by law for the 23 days' work performed by him in reporting the case, is estopped from denying that he was the official stenographer. Buck v. City of Eureka (Cal), 42 Pac. 243, 30 L. R. A. 409.

The authorities all hold—in fact, the principle is elementary—that a public officer can claim only such fees and compensation as are fixed by law for services which the law makes it his duty to perform, and that a contract to pay extra compensation is against public policy and void. 9 Cyc. 495; Mechem on Public Officers, 374; Throop on Public Officers, 477; 23 A. & E. Encyc. Law (2 Ed.), 391. In 15 A. & E. Encyc. Law (2 Ed.), 964, the rule is tersely and correctly stated as follows: "It is a matter of public policy that public officers should perform their official duties for the compensation fixed by law, and it is universally held that all contracts to pay a public officer for doing a duty which the law requires him to do without payment, or, in cases where his compensation is fixed by law, to pay him a greater sum, are illegal, as against public policy; and this is true irrespective of whether the agreement was voluntarily entered into, as in case of rewards or whether the contract for additional payment was exacted by the officer as a condition for the performance of his duties, and thereby partook of the nature of extortion, for, as has been said, once allow an officer to contract for extra compensation for the discharge of his duty, and bribery would become the means alone by which the laws could be enforced." A question identically the same as the one under consideration arose in the case of McCarthy v. Bonynge, 12 Daly (N. Y.), 356, and the court held that an agreement to pay a greater compensation than that fixed by law for transcribing the reporter's stenographic notes taken in the case was void and could not be enforced. The case was appealed to the court of appeals, and the opinion of the lower court was affirmed. 101 N. Y. 668. This same principle was involved in the case of Haddock v. Salt

Lake City, 23 Utah 521, 65 Pac. 491. And this court. held, in an opinion written by Mr. Chief Justice Bartch, that an agreement made between Salt Lake City and one· Haddock, which provided that Haddock was to receive a certain compensation, which was in excess of the fees fixed by law, for serving summons and other writs in certain cases in which the municipality was the party plaintiff, was against public policy and void. Applying· the principle of law announced in that case, which is. in harmony with the law as declared by the text-writ-· ers and the adjudicated cases, to the facts in this case,. we are of the opinion, and so hold, that the trial court erred in finding the issues in favor of the respondent.

The case is therefore reversed, with directions to the lower court to dismiss the action. And costs of· this appeal are taxed against respondent.

BARTCH, C. J., and STRAUP, J., concur.