GEORGE GUSSNER, Appellant, v. R. MILLER & H. SHUPER, a Copartnership, Respondents.

(176 N. W. 359.)

**Specific performance — allegation of default in payment — tender of payment by defendant — plaintiff not entitled to relief.**

1. Plaintiff leased defendants certain lands upon certain terms, and sold them certain personal property for a given price, part of which was to be paid in cash, and the balance within a definite time, to be secured by a chattel mortgage upon the property.

Plaintiff brought this action for specific performance, claiming defendants made default in the payment, and in the failure to give chattel mortgage for the unpaid balance of the purchase price of the property. Defendant denies the default and claims full payment and tender of payment, and tender of a note and chattel mortgage for the unpaid balance.

*Held*, that the plaintiff is not entitled to a decree of specific performance, and that the defendants have paid, or tendered payment, and tendered a note and chattel mortgage in compliance with the terms of the contract, and in excess thereof to the extent of $641.81.

**Evidence — sales — parol evidence admissible to show quality of property sold — recovery by buyer for breach of implied warranty of merchantability.**

2. Among other personal properties sold defendants was a large quantity of hay. The hay was mentioned in the written contract, but nothing therein stated as to its quality. Defendants claim the plaintiff represented the hay to be put up in good condition, and free from dirt, weeds, etc., and that such representations were false and untrue, and that they relied upon them, etc.

The defendants introduced testimony showing the spoiled condition of the hay.

*Held*, that it was proper to introduce such testimony, and that it did not vary, nor attempt to vary, the terms of the written contract, nothing being said in the contract about the quality of the hay.

*Held*, further, that, under § 5981, Comp. Laws 1913, the defendants were entitled to recover, upon an implied warranty, the hay at the time of the purchase being inaccessible to their examination, being contained in some thirty-three stacks, the inside of which could not well be examined until they were used; and it being further shown that part of the hay was unmerchantable by reason of being spoiled or in a decaying condition.

Opinion filed November 8, 1919. Rehearing denied January 7, 1920.

---

NOTE.—On right to specific performance of contract to execute chattel mortgage or security on chattels, see note in 6 L.R.A.(N.S.) 588.

Appeal from the District Court of Grant county, *C. W. Buttz, J.,* acting at the written request of J. M. Hadley, Judge of the 12th Judicial District.

Modified and affirmed.

*Newton, Dullam, & Young,* for the plaintiff.

All prior negotiations were merged in the written contract, and no former negotiations are admissible in evidence in a suit upon such contract. Gilbert Mfg. Co. v. Bryan, 39 N. D. 13, 166 N. W. 805; Comp. Laws 1913, § 5889; 23 R. C. L. p. 1395, § 219.

The existing statutes, and the settled law of the land at the time a contract is made, become a part of it, and must be read into it. 6 R. C. L. p. 855, § 243.

An agreement to give a chattel mortgage may be specifically decreed to be a chattel mortgage. Brown v. Van Winkle, 6 L.R.A.(N.S.) 588; 36 Cyc. 566; St. Louis Clay Products Co. v. Christopher, 152 Wis. 603, 140 N. W. 351; Gandy v. Collins, 214 N. Y. 293, 108 N. E. 415.

*Jacobsen & Murray,* for respondents.

The testimony shows that the plaintiff drew up this contract. Consequently all the ambiguities are to be construed in favor of the defendant. N. D. Rev. Stat. 1913, § 5914.

The vendor of personal property impliedly warrants the quality of the articles sold. Holbert v. Weber, 36 N. D. 106, 161 N. W. 560.

"An express warranty that the article should be in good order does not exclude an implied warranty of fitness for the purpose intended." 35 Cyc. 393, note 80, 539, ¶ 2; Blackmore v. Fairbanks, 79 Iowa, 282, 44 N. W. 548.

Conceding that the evidence does not show fraud, still it shows a failure of consideration. Such is a good defense. 35 Cyc. 539, ¶ 3.

"A parol contemporaneous agreement, which constituted the inducing cause of a written contract, or formed a part of the consideration therefor, is generally admissible in evidence." Erickson v. Wiper, 33 N. D. 193, 157 N. W. 592; Putnam v. Prouty, 24 N. D. 517, 140 N. W. 93.

The breach of warranty was not waived by payment of the price. 35 Cyc. 433, ¶ 4.

GRACE, J. The plaintiff, in October, 1917, leased to the defendants certain real property, consisting of a large farm in Burleigh county, North Dakota, for the term of five years at a certain stipulated cash rental per annum.

The plaintiff, in said agreement, sold the defendant 160 head of cattle at the agreed price of $6.75 per hundred weight; 8 head of horses at $1,100; harnesses amounting to $140; a large amount of machinery at $1,556.72; 3 milch cows at $160, and a large amount of hay at $13.50 a ton, which was to be inventoried by November 1, 1917; the horses, harnesses, machinery, and hay were to be paid for by one half cash, the balance within seventy days, and to be secured by a mortgage on the horses, hay, machinery, etc.

The cattle were paid for in cash. The defendants paid $500 on the other property at the time of purchase. The dispute arose as to the amount remaining due upon the balance of the property so purchased, the defendants claiming that the alfalfa hay was represented as of good quality, and not spoiled or decayed; that it was well stacked and there was no dirt or clay raked into the stacks. The defendants claim that the hay was improperly stacked and the inside thereof decayed and rotten, which was unknown to them at the time they purchased the hay. The defendants claim that the representations were false, and that they relied upon them and purchased the hay. There is also a further contention on the part of defendants that they did not get all the machinery they purchased.

The plaintiff brings this action for specific performance of the contract. He claims there is still owing him, for the balance of the purchase price of the horses, hay, and machinery, $9,076.74. The defendants claim the amount should be $7,313.76, upon which they were entitled to a credit of $500, which was paid at the time of the contract. They tendered the plaintiff, on about the 10th day of November, 1917, $3,156.88 in currency as a balance of one half of the purchase price of the horses, hay, etc., and also tendered a note and chattel mortgage for $3,656.88 in settlement of the other half of such indebtedness, and, in compliance with the contract, tendered a good and sufficient bond in the sum of $4,000,—all of which tenders were unaccepted by the plaintiff.

The money, chattel mortgage, note, and bond tendered were deposited at the Capital Security Bank of Bismarck, and there lawfully tendered to plaintiff.

The defendants have counterclaims against plaintiff, and thereby claim damages for failure to receive part of the machinery, and for the unmerchantable condition of a portion of the hay. It is also a serious dispute as to the number of tons of certain alfalfa hay.

The principal questions for consideration relate to the amount and quality of the hay, the value of the machinery which defendants purchased, which was not delivered to them, and the actual balance due plaintiff after crediting defendant with the amount to which they are entitled by reason of any sum of money found to be owing them on any counterclaims. A decision of these questions will practically dispose of this case.

The plaintiff and defendants each have submitted in cubic feet, their calculation as to the amount of the hay. We have examined them with care, and conclude that of the defendants contained in their brief is substantially correct, which shows there was 174,730 cubic feet of hay.

The defendants' calculation does not seem to include a certain three-cornered stack of alfalfa hay which the plaintiff shows contained 2,296 feet and a fraction. The defendants' calculation on all the other stacks, both wild and alfalfa, is over the correct number of cubic feet to an extent which is sufficient to practically allow for the three-cornered stack, so that their calculation is approximately correct.

There is a contention as to the number of cubic feet which should be allowed for a ton of alfalfa hay, the plaintiff contending it should be 343 feet, and the defendants, that it should be 512 feet.

The plaintiff bases his contention on the provisions of § 3007, Comp. Laws 1913, which provides: "A ton of hay shall consist of 2,000 lbs.; or by measurement 343 cubic feet, after the same shall have been stacked thirty days or such time as may be agreed upon between the parties."

The number of cubic feet specified in that section for a ton of hay, we are fully convinced, relates to wild hay or such other specie of hay as is practically of similar texture to wild hay in the sense that the stalks thereof are of such small diameter that when placed in a stack

they will pack or solidify in the same proportion as wild hay. We know, however, that alfalfa and clover have quite large stalks or stems. 'Alfalfa is a specie of clover; it belongs to the clover family; its stems or stalks, as a rule, are coarse. When placed in a stack, it is self-evident that it will not be compressed or be so much solidified as hay of finer texture and stalks. A perfect cube thereof of 7 feet by reason of the coarseness of the stalk could not be compressed into as solid condition as a similar amount of wild hay or hay of similar texture. It must follow that the cube of alfalfa hay would weigh less than a like cube of wild or similar hay for the reason there is more space unoccupied in the cube of it referred to.

We are of the opinion that the preponderance of the testimony clearly shows it was agreed between the parties in measuring the alfalfa hay that 512 cubic feet thereof would be equivalent to a ton. Testimony further shows that, in the state of Montana, that number of feet are considered the equivalent of a ton of alfalfa. That measurement presupposes the alfalfa has been stacked sufficient time to become fairly packed, and, further, that it was stacked in proper condition and is in a proper state of preservation.

We are of the opinion that 343 feet should be considered the equivalent of a ton of wild hay, and, under the agreement between the parties, 512 feet the equivalent of a ton of alfalfa.

Taking respondent's calculations as approximately correct, there were 354.12 tons of hay. Disregarding the small fraction, 354 tons of hay at $13.50 per ton gives $4,779, as the total value of the hay, if it were all good hay.

The trial court allowed plaintiff for 382½ tons and found the value to be $5,163.75; it should not have allowed the plaintiff for more than 354 tons; it, however, allowed a deduction of 49 tons on account of that much of the hay being spoiled. This is to some extent misleading. Testimony shows that there were 100 tons of spoiled hay which the defendants admitted were worth $6 per ton. Their loss on the hundred tons would be $7.50 per ton, or $750. Deducting that amount from the total value of the hay would leave $4,029. The invoice price of the machinery, after allowing the discount agreed upon, was $1,537.75, and the harness, $140; total, $1,677.75. There should be deducted

from this amount $134.80 for articles of machinery which defendants did not get, and for a certain 2-horse engine with which defendants were improperly charged. Those deductions being made would leave $1,542.95 as the inventory agreed price for the machinery and harness. To this amount must be added $1,100, price of the horses, and $4,029, the net cost of the hay after above deductions, gives the total of $6,671.95.

The latter amount is the amount which defendants should have paid or tendered to the plaintiff for the purchase price for said personal property which is involved in this litigation, instead of the sum of $7,313.76; the difference, $641.81, the defendants are entitled to have returned to them from the plaintiff or from the bank where the amount of such tender was left, it being an excess payment or excess tender to that amount.

The plaintiff's claim that the money and the chattel mortgage tendered were not sufficient in amount contains no merit. He complains that the note and chattel mortgage tendered by the defendants was not in the proper form, not according to the terms of the contract. The contract really contains no terms in this regard, with the exception that it provides with reference to the payment for the horses, harness, machinery, and hay, that one half the total sum is to be paid in cash and the balance is to be paid on or before the expiration of seventy days, same to be secured by a mortgage upon the above-described horses, hay, machinery, etc.

Construing the contract literally, the defendants were not required to give a note, but simply a mortgage to secure the one-half purchase price remaining unpaid. According to the strict terms of the agreement, the defendants were required to execute only a chattel mortgage. The chattel mortgage, we presume, would be legal if it secured the sum named in it, that sum not being evidenced by a note. We think, so far as the agreement is concerned, the note and chattel mortgage executed more than complied with any requirement of it, though the note was in form, non-negotiable, and made subject to all defenses and counterclaims.

The plaintiff further complains that the chattel mortgage tendered was not sufficient by reason of certain clauses being stricken out of the

mortgage, and for the further reason that it contained a provision providing that the mortgagors could feed the hay. It seems, however, that the plaintiff made no objection to the tender upon any of these grounds, and it may be assumed that he waived any such defects; even though the clauses complained of were stricken out of the chattel mortgage tendered, if it had been accepted, it would have constituted a valid lien upon the property therein described.

In this connection, it is well to remember that it should be taken into consideration that the defendants, in pursuance of the terms of the contract, tendered to plaintiff a bond in the sum of $4,000. The sufficiency of this bond is not questioned. It operated to give plaintiff further security for the debt which defendants owed him, and which is the subject of this litigation. Nowhere in this record has it been shown that the defendants exercised any bad faith toward the plaintiff. On the contrary, it appears they have acted in the best of good faith.

Regarding the clause therein which provided that the defendants might feed the hay, it will be noted that the lease was dated October 13, 1917. The court has a right to take judicial notice of the seasons of the year, and in that respect may take notice that the grazing season was near its close at the time the lease was made.

The defendants had purchased from the plaintiff a large amount of personal property, consisting of, among other things, a large amount of live stock above mentioned, especially 160 head of cattle. The season was at hand when they would have to be fed hay. It seems apparrent that both parties knew and intended that the hay was purchased for the purpose of being fed to the stock in question. Certainly the plaintiff did not intend that the defendants should purchase all the hay, and then not to be permitted to feed it to the large amount of stock which he had purchased. Without laying down, or attempting to lay down, any rule in such case, we are of the opinion in this case that no other inference can be drawn from the facts and circumstances other than that both parties knew and intended the hay in question to be fed to the stock, and impliedly the plaintiff authorized and consented that it might be so used.

The defendants claim damages on account of overweight of cattle

44 N. D.—38.

caused by the plaintiff weighing the cattle at a different time, and under different conditions than those under which they were to be weighed. The cattle were weighed and were paid for without the defendants interposing any objection. There are no circumstances attendant upon the weighing and the settlement for the cattle that are sufficient to disturb the settlement then made. It is held that the settlement disposed of that matter.

The plaintiff challenges the finding of fact of the court with reference to the quality of the hay, and contends that any representations made by plaintiff to the effect that the hay was of good quality and not spoiled or decayed were made, if at all, prior to the written agreement in question, and for this reason merged in it. He cites in support of this contention the case of Gilbert Mfg. Co. v. Bryan, 39 N. D. 13, 166 N. W. 805. While that case, in part, supports the contention of plaintiff, it does not fully do so. It dealt with the attempt to vary the terms of a written contract by parol testimony. There was an attempt in that case to show that there were certain oral agreements made prior to the execution of the written instrument which were different than those in the written agreement. Where there is an attempt to prove parol agreements, made at or before the time of the execution of the written contract, which would vary the terms of it, and which were not the inducing cause of it, there is no doubt the rule laid down in the Gilbert-Bryan Case is a correct one. When it is read, however, carefully it will be seen that it deals only with the terms which are stated in the written contract. It does not include parol testimony as to agreement or agreements, or matter which is not covered by the written contract. It recognizes the rule that it is proper to prove by parol testimony a part of a contract or agreement not included in the written agreement.

In the case at bar, there is nothing in the written contract as to the quality of the hay. The written contract is entirely silent upon this matter. The introduction of parol testimony as to the quality of the hay did not attempt to vary any term in the written instrument in question, and was properly admitted.

Aside from the question of the written agreement, there was, under

the Sales Act, chap. 202 of the Session Laws of 1917, an implied warranty of the quality of the hay.

There were about thirty-three stacks of hay. Manifestly, it would have been practically impossible for defendants to have made an examination of it in the stack, by which its actual condition could have been ascertained. Its condition on the outside of stacks might be examined, and its condition, to some extent, determined, but that within considerable distance from the outside could hardly be known until the stacks were opened and used.

According to the testimony of Miller, the hay was described by Gussner as follows: "This hay is put up in the best shape you ever had hay put up," and, "This alfalfa hay is the best I ever put up," and "It is put up in good shape and there is no weeds in it and no dirt."

In these circumstances, the hay at the time of the sale was, in fact, inaccessible to the examination of the buyer.

Plaintiff, by reason of the implied warranty, is liable in damages to the extent in which such hay fails to correspond with merchantable hay.

The hay having been shown by competent testimony to have been in a damaged condition, to such an extent that 100 tons thereof were not of the value of more than $6 per ton, instead of $13.50, the sale price, it must follow that the hay was, to that extent, not merchantable, and that defendants suffered damages accordingly.

It is clear the plaintiff is not entitled to any relief by the remedy of specific performance or otherwise. The defendants have not been and are not in default. So far as this record is concerned, it shows they have performed, or offered to perform, the terms or obligations of the contract. They have either paid or tendered payment of the amounts due upon the contract, when due, and have tendered their note and chattel mortgage, as above stated, for the unpaid balance of the personal property in question.

The court ordered judgment in favor of the defendants upon the counterclaims for the excess payment and excess tender for the purchase price of the hay, machinery, etc., in the sum of $168.56. As we view the matter, the court was in error in its computation, and its error may be considered clerical and subject to correction by the modification

thereof to show the excess payment and excess tender which the defendants made, which is, approximately, $641.81.

The judgment of the District Court should be modified in the manner above indicated, and as modified should be affirmed.

It is so ordered.

The respondents are entitled to statutory costs on appeal.

ROBINSON and BRONSON, JJ., concur.

BIRDZELL, J. I concur, except as to the portions of the opinion relating to warranties and to an item of $134.80.

CHRISTIANSON, Ch. J. (dissenting in part). I am unable to agree with the conclusions reached by my associates on some of the questions involved in this case. The parties to this action entered into a written contract. The contract covers three pages of closely typewritten matter. It covers the transaction between the parties in detail. It is in all respects definite and unambiguous. There is no pretense or claim here of any fraud, accident, or mistake. The defendants merely assert that in the negotiations preceding the execution of the written contract there was a warranty as to the quality of the hay, and they claim the right to show and recover upon such warranty. Upon the trial, the plaintiff objected to the evidence offered relating to the alleged oral warranty, on the ground that the oral negotiations had been merged in the written contract; and that parol evidence was inadmissible to add to or vary a written instrument. In my opinion the objection was well taken. Under our laws "the execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations *concerning its matter,* which preceded or accompanied the execution of the instrument." Civ. Code 1913, § 5889. This section is applicable to the contract here. "The rule is well settled," says Mechem (Mechem, Sales, § 1254), "that where the parties have reduced to writing what appears to be a complete and certain agreement, importing a legal obligation, it will, in the absence of fraud, accident, or mistake, be conclusively presumed that the writing contains the whole of the agreement between the par-

ties, and parol evidence or prior, contemporaneous, or subsequent conversations, representations, or statements, will not be received for the purpose of adding to or varying the written instrument. If, therefore, such a writing exists between the parties, and it contains no warranty at all, no warranty can be added by parol." Ruling Case Law says: "As a general rule a contemporaneous oral warranty cannot be ingrafted on a written contract or bill of sale which on its face purports to evidence the entire agreement of the parties, irrespective of whether it is silent on the matter of warranties or not. The reason for this is that a warranty, if made at all, forms a part of the contract of sale, and is not a collateral contract, and therefore proof of such warranty cannot be added to the written agreement by parol evidence." 23 R. C. L. pp. 1399, 1400, § 224.

I therefore believe that the evidence as to the oral warranty was inadmissible. I also believe that the evidence adduced in this case, if admissible, was insufficient to establish the warranty alleged.

The majority opinion holds that in any event there was a breach of the warranty implied under § 5981, Comp. Laws 1913. In my opinion this is incorrect. There was no averment of such implied warranty or of its breach. Defendants' counterclaim was based solely upon the express warranty. The implied warranty was not an issue. No recovery was sought thereon. It is elementary that a party who seeks to recover for the breach of a warranty must, by appropriate averment, show (1) the existence of the warranty; (2) the breach thereof; and (3) the resultant damages. 35 Cyc. 446–451.

The written contract was dated October 13, 1917. Under its terms the plaintiff sold certain machinery and harnesses to the defendants. The articles sold were enumerated, and a price fixed on each article in a list attached to the contract. The contract specified that the defendants were to pay for such articles "55 per cent of the invoice price during the season of 1915." The defendants contended that they had not received certain articles, the aggregate list price of which amounted to $134.80. The trial court awarded the defendants $134.80 on this account. It seems to me that this was. erroneous. The articles were secondhand. There was no evidence of their value. The price given in the list was the invoice price of 1915. The defendants had agreed

to pay for this property only 55 per cent of $134.80 or $74.14. It seems to me that they should have been allowed to recover that amount only.

I agree with my associates that the evidence justified the trial court in finding that the parties, at the time they measured the hay, in effect, agreed that 512 cubic feet of alfalfa and 343 cubic feet of prairie hay should constitute a ton. I also believe that the findings in the majority opinion as to amount of hay are correct.