## BAKER v. LATSES.

No. 3732.   Decided April 11, 1922.   (206 Pac. 553.)

1. SALES—EVIDENCE HELD TO SUPPORT FINDINGS FOR SELLER SUING FOR PRICE. In a seller's action for the price of potatoes, defended on the ground that they were sold as good potatoes, and were in fact dry rotted and worthless, evidence *held* sufficient to sustain findings in favor of plaintiff.

2. APPEAL AND ERROR—FINDINGS SUPPORTED BY EVIDENCE NOT DISTURBED. Where the findings of the trial court are amply sustained by the evidence, they will not be disturbed on appeal.[1]

3. SALES—WHERE GOODS EXAMINED, RULE OF CAVEAT EMPTOR APPLIES, AND NO WARRANTY IS IMPLIED. Where a seller of potatoes made no representations as to their quality, and the buyer saw them and thoroughly examined them before buying, the doctrine of caveat emptor applied, and there was no express or implied warranty.

4. CONTRACTS—NOT ENFORCEABLE IF MADE IN VIOLATION OF LAW. Every contract in violation of law is void, and the courts will not lend their aid to the enforcement of, nor permit a recovery under contracts made in violation of law prohibiting them or declaring them unlawful.[2]

5. FOOD—SALE OF POTATOES PARTLY BAD HELD NOT FORBIDDEN. Comp. Laws 1917, § 1962, prohibiting the sale of any article of

food unwholesome or unfit to be eaten or drunk, etc., and a city ordinance to the same effect, did not prohibit a sale of potatoes, three-fourths of which were sound and fit for use, though the other fourth were affected with dry rot which could only be discovered by cutting.[3]

6. MUNICIPAL CORPORATIONS—STATUTES—STATUTE AND ORDINANCES GIVEN PRACTICAL APPLICATION AND INTERPRETED IN LIGHT OF CONDITIONS AND CIRCUMSTANCES AND OBJECTS SOUGHT. Statutes as well as ordinances should be given some practical application, and are uniformly interpreted in the light of the conditions and circumstances under which they are passed and the objects sought to be attained.

7. FOOD—CANNOT BE DESTROYED IN BULK BECAUSE SOME PORTION UNFIT FOR USE WHEN READILY SEPARABLE. Public health officers have no right to confiscate and destroy articles of food in bulk simply because some portion may be affected and unfit for use, when the good can be detected and readily separated, provided the spoiled portion does not contaminate the whole.

Appeal from District Court, Third District, Salt Lake County; *L. B. Wight,* Judge.

Action by Chester Baker against James Latses. From a judgment for plaintiff, defendant appeals.

AFFIRMED.

*King & Schulder,* of Salt Lake City, for appellant.

*Ray Van Cott,* of Salt Lake City, for respondent.

---

[1] *Whittaker* v. *Ferguson,* 16 Utah, 240, 51 Pac. 980; *McCarrick* v. *Lenox Mining Co.,* 49 Utah, 353, 164 Pac. 478; *Bartholomew* v. *Pickett,* 51 Utah, 312, 170 Pac. 65.

[2] *Haddock* v. *Salt Lake City,* 23 Utah, 527, 65 Pac. 491.

[3] Distinguishing *Haddock* v. *Salt Lake City,* 23 Utah, 527, 65 Pac. 491.

CORFMAN, C. J.

This is an action brought by plaintiff against the defendant to recover $163, the stipulated purchase price of 4,075 pounds

of potatoes sold and delivered by plaintiff to the defendant at Salt Lake City on April 1, 1920.

The action originated and was first tried in the city court of Salt Lake City, where judgment was rendered against the defendant for the full amount sued for by the plaintiff. An appeal was afterwards taken to the district court of Salt Lake county, where the case was tried de novo with the same result. From the judgment rendered against him by the district court, defendant appeals to this court.

The complaint is in the usual form as in actions brought for recovery of the purchase price of specific personal property sold and delivered. The answer in substance, after admitting that an agreement for the sale and delivery of potatoes was entered into between the parties, alleges that under the terms of said agreement plaintiff was to deliver ''good potatoes,'' and that the potatoes delivered were dry-rotted and worthless; that after they were delivered by plaintiff the defendant discovered that they were of no value, and thereupon it was agreed by the parties, that the contract should be ''rescinded and canceled,'' but before defendant could return the potatoes to the plaintiff they were condemned by the board of health of Salt Lake City as unwholesome and unfit for use, and taken away, thus preventing defendant from returning them to plaintiff's possession. It is also alleged by the answer that plaintiff knew that said potatoes were dry-rotted and worthless.

Plaintiff filed a reply to or denial of the affirmative matters set up as a defense in defendant's answer, wherein it was also affirmatively alleged that before the defendant purchased and received said potatoes he sampled and examined them, and thereby ascertained their quality and condition; that after doing so he purchased and received them with knowledge, and at a price considerably lower than the regular market price.

In a trial to the court without a jury the issues were found in plaintiff's favor. The defendant on this appeal assails the trial court's findings upon the ground that they are not supported by the evidence, and complains that the conclusions

of law and judgment are based upon erroneous findings of fact and are contrary to law.

Briefly stated the evidence shows: That the plaintiff was a farmer residing at Union, Salt Lake county. On or about April 1, 1920, plaintiff had negotiated for the sale of a wagon load of potatoes raised by him to the Nelson-Anson Commission House of Salt Lake City. That house refused to receive the potatoes, stating that the potatoes could not be used by it. Thereupon plaintiff took the potatoes to defendant's place of business in Salt Lake City where the alleged sale and delivery of the potatoes to the defendant took place. As to what representations, if any, plaintiff made to the defendant concerning the condition and quality of the potatoes at the time the transaction of sale was entered into between the parties the evidence is in conflict. Defendant testified that the plaintiff at that time represented to him that the potatoes were "good potatoes." Plaintiff testified that he made no representations concerning the quality or condition of the potatoes. As to what actually did transpire between the parties in connection with the transaction of sale plaintiff testified in part as follows:

"I asked him if he wanted to buy some potatoes. Q. What did he say? A. He asked me what I wanted for them, and I told him $5.25 a hundred. Q. What he say? A. 'Go up and weigh them.' Q. That was all the conversation had the first time? A. Yes, sir. Q. What did you do then? A. I went up and weighed them. * * * Q. Then you came back after you weighed them? A. Yes, sir. Q. And saw Mr. Latses (defendant) again? A. Yes, sir. Q. Did you have any further conversation with him? A. Yes, sir. Q. What was that? A. He wanted to know if they were good potatoes. I told him to get up on the wagon and look at them. He got up on the wagon and cut several sacks open and he began to cut the potatoes open—cut several I guess out of each sack. Q. At that time? A. Yes, sir; and he found some dry rot, and he said that he couldn't give me much for the load. He said, 'I can give you five dollars and take them.' Q. What did you say? A. I said 'All right; you can have them.' And I drove to the yard, to a shed he had there, and we started to unload them. After we got them half unloaded he says, 'I can't take them at that price.' He says, 'Throw the rest of them back in the wagon, or I will give $4 to unload them all. I will take them at $4 * * * a hundred.'"

The plaintiff further testified that he thereupon accepted defendant's offer of $4, unloaded the potatoes at the defendant's yard, and received his check for $163, the full amount agreed upon, but payment on the check was thereafter stopped by defendant.

Some of the witnesses in defendant's behalf testified that the potatoes were so badly affected with dry rot that they were worthless and wholly unfit for human consumption; other witnesses who were called in plaintiff's behalf gave testimony to the effect, and the trial court found, that only 25 per cent. of the potatoes were affected with dry rot, and that the defendant received them at less than the market price after examination as to their quality and condition.

It also appears from the record that the potatoes were thereafter condemned as unfit for use by an officer of the Salt Lake City Board of Health while they remained in the defendant's possession. It does not appear from the record that there was any agreement between the parties to the effect that the contract of sale entered into should be canceled; nor is there any substantial evidence in the record tending to show that the plaintiff at any time agreed to accept or receive a redelivery of the potatoes.

After a careful review of the record we are of the opinion that the findings of the trial court in plaintiff's favor are amply sustained by the evidence. That being true, as has been heretofore held under the repeated rulings of this court, the findings of the trial court will not be disturbed on appeal. *Whittaker v. Ferguson,* 16 Utah, 240, 51 Pac. 980; *McCarrick v. Lenox Mining Co.,* 49 Utah, 353, 164 Pac. 478; *Bartholomew v. Pickett,* 51 Utah, 312, 170 Pac. 65.

It is, however, further contended by defendant that, as matter of law, the trial court arrived at erroneous conclusions under the facts and circumstances disclosed by the record and that instead of entering judgment in plaintiff's favor for the agreed price of the potatoes, a judgment should have been rendered against the plaintiff no cause of action, for two reasons: First, that the potatoes were expressly warranted

by the plaintiff to be "good potatoes," or, at least, impliedly warranted to be fit for human food, secondly, that the sale of the potatoes was in contravention of our statute declaring the sale of any unwholesome article of food for human use to be unlawful.

Under the facts and circumstances disclosed by the record there is no merit whatever in the contention that plaintiff should be barred from recovering the purchase price of the potatoes on the theory that they were either expressly or impliedly warranted. The plaintiff was the grower of the potatoes. The defendant purchased them for resale to supply the retail trade. As pointed out, the evidence supports the trial court's finding that the plaintiff made no representations whatever as to the quality of the potatoes. Defendant saw them—examined them, as we think the evidence shows, quite thoroughly. There is no escape from the conclusion that he knew the kind of potatoes he was bargaining for, and that he purchased them relying on his own judgment. The doctrine of caveat emptor therefore applies. *Springfield Shingle Co.* v. *Edgecomb Mill Co.*, 52 Wash. 620, 101 Pac. 233, 35 L. R. A. (N. S.) 258-277, column 1: 2 Mechem on Sales, § 1355.

The questions raised by defendant as to the lawfulness of the sale and as to whether the plaintiff should be permitted to maintain his action for the purchase price of the potatoes are much more difficult matters for determination. The plaintiff, as well as the defendant, had knowledge when the sale was made that some portion of the potatoes was affected with fusarium wilt or dry rot. The trial court found that approximately 25 per cent. of the potatoes dealt with was thus affected and rendered unfit for human food. Comp. Laws Utah 1917, § 1962, with respect to unwholesome food, reads:

"It shall be unlawful for any person to sell, or offer for sale, or have in his possession with intent to sell, any article of food that has become tainted, decayed, spoiled, or is otherwise unwholesome or unfit to be eaten or drunk."

It is also provided by section 110 of the Ordinances of Salt Lake City (received in evidence) that:

"It shall be unlawful for any person to expose for sale or sell in

any market, house, shop or elsewhere, any tainted, putrid or unwholesome meat or provisions; and it shall be and is hereby made the duty of the inspector to forthwith seize and confiscate all such meat and provisions."

Manifestly both the statute and the ordinance above quoted were passed in the interest of the public health, and they are of like import, with the exception that, while the statute does not provide for seizure and confiscation of the articles mentioned, the ordinance does contain a provision to that effect. It must be conceded as a general proposition that the selling of "tainted, decayed, spoiled, or * * * otherwise unwholesome" meat and provisions unfit for human consumption is unlawful and offends against both statute and ordinance.

It is the generally accepted doctrine of this country that every contract in violation of law is void. It is equally true that our courts will not lend their aid to the enforcement of nor permit a recovery of compensation under,        4 contracts made and entered into in violation of the law prohibiting them or declaring them to be unlawful. *Levinson* v. *Boas,* 150 Cal. 185, 88 Pac. 825, 12 L. R. A. (N. S.) 577, note, col. 2, 11 Ann. Cas. 661; *Haddock* v. *Salt Lake City,* 23 Utah, 527, 65 Pac. 491.

In this case it is admitted that a portion of the potatoes sold was affected with dry rot, and thus rendered unfit for human use. It is also admitted that all of the potatoes, both good and bad, were disposed of in one transaction. If, under the facts and circumstances, the sale thus made was unlawful, then both parties were, under the facts and circumstances, in pari delicto, for they both entered into the transaction voluntarily and with knowledge that some of the potatoes were unwholesome and unfit for use. Ordinarily, where products of the farm are found to be good in part and bad in part, the good can readily be sorted or separated from the bad, and when that is done there would be no legal objection to a sale of the portion found to be sound and wholesome; but in this instance the evidence shows that all the potatoes appeared alike, and the only way they could be sorted, or the good separated from the bad, was by cutting all of them open. That

method was wholly impracticable, and would have resulted in the loss of the good potatoes as well as the bad. It therefore became necessary in this particular transaction to either sell the potatoes as a whole or not make any sale. As the sale was finally consummated the defendant acquired title to all of the potatoes, both good and bad. He now invokes the provisions of the statute and ordinance, and contends that no recovery can be had for the price of the potatoes because of the fact that plaintiff knowingly sold him potatoes some of which were unfit for human food. The following authorities are cited to support his contention: *Haddock* v. *Salt Lake City*, supra; *Swank* v. *Moisan*, 85 Or. 662, 166 Pac. 962; *Teachout* v. *Bogy*, 175 Cal. 481, 166 Pac. 319; 6 R. C. L. §§ 105, 106; 6 Ency. L. (2d Ed.) p. 757. Of course the foregoing authorities are cited on the assumption at least that the contract of sale we now have under consideration nto only contravened public policy, but also that it was illegal and void by reason of the provisions of section 1962, supra, and the ordinance of Salt Lake City. It is certain that a sale of the kind here complained of by defendant is not expressly prohibited nor declared to be unlawful by either the statute or ordinance he relies upon. Nor do we think such a sale is even impliedly forbidden. As we have pointed out, both the statute and the ordinance were intended to protect the public health by making it unlawful to sell or keep for sale unwholesome articles of food. The evidence in this case clearly shows, and the trial court found, that three-fourths of the potatoes were sound and fit for use. Can any good reason be assigned for condemning good potatoes because some bad ones may be found among them? It is a matter of common knowledge that some bad potatoes may be found in every grocer's field and in every market. While potatoes affected with dry rot cannot be detected without cutting into them with a knife, it does not reasonably follow that all potatoes offered for human consumption should be destroyed.

Statutes as well as ordinances should be given some practical application, and they are uniformly interpreted and construed in the light of the conditions and circumstances

under which they are passed and the objects sought to be attained by them. If it is practicable in preparing     **6** potatoes for food to separate those that are affected with dry rot from those that are fit for use, the health of the consumers will not be affected by using the good ones and consigning the bad ones to the garbage can. All fruits and vegetables have to be prepared for food and a considerable portion discarded as unfit before using. If the buyer of potatoes takes them with knowledge that some portion is affected with dry rot he should not complain. If the merchant wrongfully sells them without making known their quality to the consumer the latter will very likely remind him in a way that he will most likely correct the imposition. Anyway, the consumer has his remedy against the merchant if fraud and deception be practiced. As to whether or not the merchant who purchases farm products from the grower with knowledge or opportunity to examine as to their condition gets them for an adequate price, neither the public nor the courts will be concerned. Usually, as in this instance, the merchant takes them at a reduced price and sells them to his patrons accordingly.

It stands to reason that public health officers have no right to confiscate and destroy articles of food in bulk simply because some portion may be affected and unfit for use when the good can be detected from the bad and readily separated before being used, provided, of course, the spoiled portion does not contaminate the whole. In our judgment     **7** neither the letter nor the spirit of the statute invoked in this case required the officer to confiscate and destroy the defendant's potatoes, and the consequences of his acts in that regard should not be visited upon the plaintiff.

Under the facts and circumstances disclosed by the evidence in this case, we are firmly of the opinion that the trial court was right in finding the issues in plaintiff's favor and in rendering judgment against the defendant for the full amount of the price he agreed to pay the plaintiff for the potatoes. The judgment of the district court is therefore affirmed, with costs.

Appeal from Third District

WEBER, GIDEON, THURMAN, and FRICK, JJ., concur.