[Civ. No. 11496.   Second Appellate District, Division One.—October 26, 1937.]

THE PEOPLE, Respondent, v. TWO HUNDRED THIRTY-SEVEN 30-Lb. CANS OF WHOLE HEN EGGS, etc., et al., Defendants; CARL CLAVIN, etc., Appellant.

Alexander L. Oster for Appellant.

U. S. Webb, Attorney-General, and Bayard Rhone, Deputy Attorney-General, for Respondent.

DORAN, J.—By this action the People of the State of California sought to condemn a quantity of canned eggs on the ground that the same were adulterated within the meaning of section 4 of the act commonly known as the California Pure Food Act, Statutes of 1907, chapter 181, as amended, in that said eggs consisted in whole or in part of filthy, decomposed, and putrid animal and vegetable substances, and were unfit for human consumption. The eggs in question were in a cold-storage warehouse, where they had been delivered at various times over a period of months.

The court found in substance that an average representative sample was taken of the food products in question, and that the eggs were adulterated within the meaning of the Pure

Food Act. The judgment which followed ordered that the eggs be destroyed.

In the appeal herein from the judgment, the sole contention of appellant is that the evidence does not warrant the finding that all of the eggs were adulterated, for the reason that only a few cans from each lot were sampled and inspected, and found to be adulterated. As to the cans actually sampled and inspected and found to be adulterated, appellant concedes the evidence to be sufficient, but it is urged the samples taken did not constitute an average representative sample.

The evidence shows that frozen eggs are articles of trade and commerce and that they are prepared by breaking the eggs, and in some cases separating the yolks from the albumen, the product then being poured into thirty-pound cans and frozen.

Of one lot of 237 thirty-pound cans of eggs, 21 cans were sampled and inspected. The other lots were sampled and inspected in the following proportion: Of the lot of 164 cans, 14 cans were sampled and inspected; lot of 62 cans, 10 cans were sampled and inspected; lot of 37 cans, 5 cans were sampled and inspected; lot of 99 cans, 6 cans were sampled and inspected; lot of 40 cans, 6 cans were sampled and inspected. It should be noted that at the time the inspection took place and the samples were obtained, an inspector representing the appellant accompanied respondent's inspectors and secured like samples, but, nevertheless, no evidence of any kind was offered at the trial, on behalf of appellant, to the effect that any of the eggs were fit for human consumption.

The finding of which appellant complains is as follows: "That a representative sample of said articles of food were taken, examined and inspected by duly qualified experts on behalf of the plaintiff; that said articles of food hereinabove described are adulterated as defined in section 4 of the act commonly known as the California Pure Food Act (Stats. 1907, chapter 181, as amended) in that said eggs consist in whole or in part of filthy, decomposed and putrid animal and vegetable substance and are unfit for human food as defined in Chapter 8, Division V of the Agricultural Code of the State of California."

But two authorities are cited in support of appellant's contention: in the first, *Baker* v. *Latses,* 60 Utah, 38 [206 Pac. 553], appears the following: "It stands to reason that public health officers have no right to confiscate and destroy articles of food in bulk simply because some portion may be affected and unfit for use when the good can be detected from the bad and readily separated before being used, provided, of course, the spoiled portion does not contaminate the whole. In our judgment neither the letter nor the spirit of the statute invoked in this case required the officer to confiscate and destroy the defendant's potatoes, and the consequences of his acts in that regard should not be visited upon the plaintiff"; in the second, *United States* v. *Two Hundred Cases, More or Less, of Canned Salmon,* 289 Fed. 157, the court made the following observation: "It might well be as in the oyster case . . . that where only a part of the shipment was examined, and that part ran uniformly bad, the jury would be authorized to find, if that was a fair sample, that it indicated that the whole shipment was bad; but it would not at all follow, but rather the contrary, that if a shipment was examined, and the examination showed as it proceeded that one-fifth was bad and four-fifths good, that the court could order the whole product condemned."

It will be seen that the facts in the two cases just quoted were entirely different from the facts in the case at bar. In the first case, for example, it was evident that not all of the potatoes were unfit for use, and, as the court stated in substance, inasmuch as the good could readily be separated from the bad and the spoiled portion did not contaminate the whole, to destroy the good, under such circumstances, was without reason. In the instant case there was no evidence presented to the court from which the court could infer that any of the eggs were fit for human consumption.

In the second case above quoted, the court declared in substance that it did not necessarily follow that because the examination of a shipment showed, as it proceeded, that one-fifth was bad and four-fifths were good, that the court could order the whole product condemned. In the instant case, no such situation or a like situation is presented. To the contrary, the record reveals that of the cans of eggs sampled and inspected, with the exception of three cans of a certain

lot, about which no complaint is made, all were found to be adulterated or otherwise unfit for human consumption.

The doctrine to the effect that the finding of the court, when supported by the evidence, will not be disturbed on appeal, is clearly applicable and disposes of the only question raised by the appeal herein.

The judgment appealed from is affirmed.

York, P. J., concurred.