[No. 31030. *En Banc.* March 15, 1950.]

LLOYD L. LIBKE et al., *Appellants*, v. ARNOLD CRAIG et al., *Respondents.*[1]

[1]Reported in 216 P. (2d) 189.

871

*Kelleher & Curran,* for appellants.

*Will G. Beardslee* and *Lynn J. Gemmill,* for respondents.

BEALS, J.—Plaintiffs in this action brought suit against defendants for three hundred thirty-five dollars, alleging that that amount was due them from defendants for a load of hay (one hundred eighty-five bales) sold and delivered early in February, 1946.

By their answer, the defendants alleged that, at about the time stated, they purchased four loads of hay from the plaintiffs and paid the agreed price for three loads of the four delivered, further alleging that they accepted the hay without inspection thereof as to condition and quality; that a considerable portion of the hay was in bad condition, having been wet, and, consequently, was caked and molded, with the result that defendants suffered a fifty per cent loss in reselling the hay, and that other portions of the hay were so badly damaged that defendants suffered a total loss thereon.

By way of a cross-complaint, defendants alleged that Mr. Craig was engaged in the business of purchasing hay for

resale; that the hay which he purchased from plaintiffs was represented to be in good condition; that he paid the plaintiffs, on account of the purchase price of four loads of hay, one thousand five dollars, and that, because of the damaged condition of the hay, defendants had suffered damage in excess of seven hundred dollars.

By their reply, plaintiffs denied the allegations of the defendants' cross-complaint, and asked for the judgment they originally demanded.

After a trial before the court, sitting without a jury, the court orally announced that judgment would be rendered in favor of the defendants, and, after overruling plaintiffs' motion for judgment in their favor notwithstanding the court's oral decision or, in the alternative, for a new trial, findings of fact and conclusions of law in favor of the defendants were entered by the court, followed by a judgment in favor of the defendants and against the plaintiffs for the sum of $462.58, together with costs, from which judgment plaintiffs have appealed.

Appellants assign error upon the refusal of the trial court to enter judgment in their favor at the close of respondents' case; upon the refusal of the trial court to enter judgment in favor of appellants at the end of the trial; upon the alleged failure of the findings of fact to support the judgment rendered, and upon the entry of certain findings of fact which, appellants argue, are not supported by the evidence.

We shall refer to appellant Lloyd L. Libke as though he were the sole appellant, and to respondent Arnold Craig as though he were the sole respondent in the action.

Appellant has been engaged in farming operations near Ellensburg for over twenty-five years, raising and selling hay, which is baled prior to sale.

Respondent had been purchasing hay from appellant, as he needed it, for seven years, reselling the hay in and around Seattle to riding academies and some other customers.

On the trial, respondent contended that the four loads of hay which he purchased from appellant during the months of January and February, 1946, and which averaged one

hundred eighty-five bales a load, contained hay that was wet and had caked and molded, and that the hay was, consequently, of poor quality and unmerchantable.

Of the four loads of hay which respondent purchased after January 1st, one was resold to three or four different persons, two were resold to riding academies, and the fourth was delivered to another riding academy, three of the four loads, then, having been disposed of to be fed to horses.

Respondent frequently drove his own truck to appellant's ranch and assisted in loading the hay. An average bale of good dry hay weighs about one hundred thirty-five pounds. If the hay contains water, the weight of the bale increases, even to two hundred pounds, depending, of course, upon the amount of water contained in the hay. Appellant was present when respondent purchased the four loads referred to, and assisted in loading the bales on the truck. Testimony was introduced to the effect that it is generally impossible to tell from inspection whether or not the interior of a bale of hay has become waterlogged. Some bales were rejected by appellant and some by respondent. From the evidence, it clearly appears that a considerable quantity of the four loads of hay purchased was in bad condition, being moldy and caked. Apparently, this damage extended to approximately one half of the hay.

Witnesses called by appellant testified as to the damage to hay which is caused by mold and caking, and concerning the method by which a bale of good hay can be told from a bale of inferior hay. A witness called by appellant testified that he was present when the last hay purchased by respondent was loaded. The witness testified that respondent rejected some of the bales, but that, when the witness suggested to respondent that one particular bale was overweight, respondent said nevertheless to load the bale on the truck. The witness also testified that the hay making up the load in question weighed from one hundred twenty to one hundred forty pounds per bale.

The testimony is often confused and indefinite.

Respondent introduced in evidence three certificates of inspection of hay, signed by P. K. Peterson, a representative of the United States department of agriculture. The certificates state that the hay examined, consisting of four hundred fifteen bales, was inspected at three different places at respondent's request. Under the heading "Remarks," the certificates, referring to the hay, state "caked and mouldy" or "Mould and Musty." Respondent testified that the hay inspected was a portion of his purchases from appellant, and that the inspection certificates were made by Mr. Peterson in respondent's presence. The inspection certificates were admitted in evidence. Apparently, Mr. Peterson had died prior to the trial.

Appellant argues that the hay inspected by Mr. Peterson and examined by other witnesses, who testified on behalf of respondent that the hay was caked and moldy, was not hay purchased from appellant. As observed by the trial court in its oral opinion, testimony concerning Mr. Peterson's inspection of the hay and the certificates which he signed were received in evidence without objection.

In its oral opinion, the trial court discussed the evidence at length, stating that the witnesses who testified on behalf of respondent were worthy of belief, and that, in the courts opinion, the hay in question, sold by appellant to respondent, was not merchantable hay because of its caked and moldy condition. The trial court embodied its ruling in appropriate formal findings of fact. Appellant does not meet the burden resting upon him of overturning findings of fact made by the trial court upon disputed evidence, the findings being amply supported by evidence introduced on behalf of respondent.

Respondent testified that the greater portion of the hay that he purchased from appellant was for resale to riding academies, to be fed to horses. The evidence also discloses that hay that is wet, moldy or caked is not such hay as should be fed to horses, although cattle and goats eat it and suffer no injurious effects. The trial court found that appellant knew that respondent was purchasing hay for resale

to riding academies to be fed to horses. Appellant assails this finding, assigning error thereon as follows:

"That the evidence does not preponderate in favor of the finding of the trial court that appellant knew that the respondent was purchasing said hay for resale to riding academies, that the same would be fed to horses."

The record contains no direct evidence that respondent ever told appellant that he was reselling most of the hay which he purchased to be fed to horses. Beyond question, such was the case, but the record does not support the finding. However, it appears that respondent had been purchasing timothy hay (which is fed to horses) from appellant for many years, and that appellant knew that respondent was reselling this hay in King county. Without direct evidence, it could be assumed that appellant would know that at least a considerable portion of the timothy hay purchased would be resold to be fed to horses.

In any event, eliminating the finding last referred to, the court's finding that the hay in question was very poor in quality and not fit to be fed to horses or merchantable for any purpose, is amply supported by the record.

One in respondent's position, purchasing large quantities of hay, in the absence of any evidence to the effect that the hay was not to be fed to horses, would be entitled to assume that he was purchasing merchantable hay, fit to be fed to horses or other stock.

The evidence clearly shows that the hay in question could not have become moldy or caked from water introduced into the hay after baling.

Both parties rely upon the "Uniform Sales Act," Laws of 1925, Ex. Ses., chapter 142, p. 355, with particular reference to § 15, p. 361, Rem. Rev. Stat., § 5836-15 [P.P.C. § 860-9]. The pertinent portions of this section read as follows:

"Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the

goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. . . .

"(3) If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed. . . ."

While some of the other subdivisions of the section referred to are cited by the parties, the two subdivisions quoted constitute the portions of the statute which apply to the situation here presented.

Appellant cites the case of *Cochran v. McDonald,* 23 Wn. (2d) 348, 161 P. (2d) 305, in which this court held that a purchaser of a defective "antifreeze" from a local distributor could not recover damages from that distributor upon a warranty printed on the container by the manufacturer, it not appearing that the local vendor had adopted the warranty as his own. Appellant relies upon the following portion of the opinion, which refers to the preliminary portion of Rem. Rev. Stat., § 5836-15 and subd. 1 thereof, *supra:*

"Under this provision of the statute there are two essential elements, both of which must exist before a buyer can recover from a seller for a breach of an implied warranty: (1) the buyer either expressly or by implication must make known to the seller the particular purpose for which the article he is buying is required by him, and (2) the buyer must make it appear that, when he purchased the article, he relied upon the seller's skill or judgment."

We note that in the next paragraph of the opinion the following appears:

"Even if it may be said that, in order to comply with the first element referred to, the buyer himself does not have to make known to anyone the purpose for which he is buying the goods, but it is sufficient if from the very nature of the goods themselves the purpose must be known to all sellers of them, . . ."

In the case of *Minneapolis Steel & Mach. Co. v. Casey Land Agency,* 51 N. D. 832, 201 N. W. 172, the court quoted the following from Benjamin on Sales (5th ed.) 625, 626:

" 'A particular purpose is, in fact, the purpose expressly or impliedly communicated to the seller, for which the buyer buys the goods; and it may appear from the very description of the article, as, for example, "coatings," or a "hot water bottle." ' "

The following quotations are also in point in this connection:

"Knowledge of the buyer's particular purpose may be shown from the sale alone. [Citing cases.]" *Keenan v. Cherry & Webb,* 47 R. I. 125, 131 Atl. 309.

"But the warranty must be reasonably construed in the light of common knowledge in reference to the nature of the article sold." *Cavanagh v. F. W. Woolworth Co.,* 308 Mass. 423, 32 N. E. (2d) 256, cited with approval in *Landers v. Safeway Stores,* 172 Ore. 116, 139 P. (2d) 788, and *Woodward & Lothrop v. Heed,* 44 A. (2d) (D. C. Mun. App.) 369.

In the case at bar, appellant certainly well knew the purposes for which respondent bought the hay, namely, that it would be resold to be fed to horses or cattle, and, from the evidence, it appeared that the hay was not reasonably suitable feed for either. While cattle might have been able to eat the hay without serious results, it was not wholesome food or a desirable article for that purpose.

Appellant was not a mere dealer, who had no reason to be aware of latent defects in the product sold, as was the defendant in the case of *Cochran v. McDonald, supra.* Appellant grew and baled the hay, and comes within the scope of the text in 1 Williston on Sales (Rev. ed.) 632, § 240, where the rule is stated as follows:

"The word 'manufacturer' is given a wide meaning in the law of implied warranty. All sellers who produce the article which they sell are classed in this category—thus a grower of plants or seeds or crops and one who breeds horses or cattle are included."

In the case of *Gilpatrick v. Downie,* 143 Wash. 671, 255 Pac. 1028, 52 A. L. R. 1533, in which the plaintiff sued to recover a balance alleged to be due on the purchase price of cedar poles and fir piling, the defendant cross-complained, asking damages because some of the poles were unfit for

market, having been bored by teredos. The trial court awarded plaintiff judgment for the full amount demanded, being of the view that the vendor was not responsible to the vendee, in the absence of an express warranty. This court reversed the judgment and remanded the cause with instructions to award the appellant a certain amount as damages on account of the defective poles. In the course of the opinion, we said:

"It must, therefore, be taken as proven that, to the extent found by the trial court, the poles were, at the time of the purchase, unfit for sale and that the vendor, not being a trader but the one who produced them for sale, must bear the loss."

■ The general rule is stated in 1 Williston on Sales (Rev. ed.) 592, § 232, as follows:

"Where the seller manufactured the goods which he sells, a warranty that the goods are merchantable is implied both in England and in the United States. . . ."

In this connection, appellant relies upon the case of *Barnard v. Kellogg,* 77 U. S. 383, 19 L. Ed. 987. In the course of the opinion, appears the following:

"No principle of the common law has been better established, or more often affirmed, both in this country and in England, than that in sales of personal property, in the absence of express warranty, where the buyer has an opportunity to inspect the commodity, and the seller is guilty of no fraud, *and is neither the manufacturer nor grower of the article he sells,* the maxim of *caveat emptor* applies." (Italics ours.)

Here appellant was the grower of the hay and had baled it for sale.

Appellant, also relying upon the rule of *caveat emptor,* cites the case of *Cudahy Packing Co. v. Narzisenfeld,* 3 F. (2d) 567, in which it was held that the plaintiff, a wholesaler and the vendor of a carload of eggs, had not impliedly warranted that the eggs were all in good condition. The case is not here in point, for the reason that the vendor was merely a dealer and could not be held as a manufacturer or producer.

Appellant also relies upon subd. 3 of Rem. Rev. Stat., § 5836-15, which reads as follows: "If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed," contending that, because respondent examined the hay, he is bound by that inspection.

As to the rule applicable to examination of goods by a purchaser, the following text is found in 46 Am. Jur. 528, § 345:

". . . the Uniform Sales Act provides that if the buyer has examined the goods, there is no implied warranty as to defects which such examination ought to have revealed, but that under this provision an examination does not preclude an implied warranty of defects which are not such that they ought to have been revealed by such examination."

46 Am. Jur. 542, § 356, contains the following:

"As the rule is frequently stated, a manufacturer who sells goods of his own manufacture impliedly warrants that they are free from any latent defect growing out of the process of manufacture."

Of course, in the case at bar, the baling of the hay was accomplished entirely by appellant.

Appellant cites the case of *Baker v. Latses*, 60 Utah 38, 206 Pac. 553, in support of his argument that an inspection precludes reliance upon any warranty. The action was instituted by the seller of a quantity of potatoes. The defendant contended that the potatoes had suffered from dry rot and were worthless. On appeal, a judgment in favor of the plaintiff was affirmed. It appeared that the plaintiff transported a wagonload of potatoes to the defendant's place of business and offered them for sale. The evidence was in conflict as to what, if any, representations the plaintiff had made to the defendant concerning the condition and quality of the potatoes. The defendant opened several sacks and examined the potatoes, finding some which showed dry rot. The defendant then made an offer for the potatoes, which the plaintiff accepted. After about half the sacks were unloaded, the defendant made a lower offer, which the plaintiff accepted, receiving defendant's check, upon which the de-

fendant afterwards stopped payment, claiming that the potatoes were so badly rotted as to be worthless. The sale was made as the result of negotiations between the parties, the price agreed to be paid being based upon the fact that the goods sold were of inferior quality. The case is not here in point.

In the case of *Gussner v. Miller*, 44 N. D. 587, 176 N. W. 359, it appeared that the plaintiff had leased a large farm to the defendants for a five-year term. As part of the same transaction, plaintiff sold to the defendants a number of cattle and horses, machinery, and a large quantity of hay. Some of the property was paid for in cash, a down payment having been made on the remainder. In an action by the vendor to recover a balance alleged to be due, the defendants pleaded that the hay had been represented to be of good quality, well stacked, and that no dirt or clay was included in the stacks. The defendants claimed that the hay was improperly stacked, and that the hay on the interior of the stacks was decayed and rotten, all of which was unknown to them at the time of the transaction. The defendants admitted an indebtedness to the plaintiff, and made certain tenders, which the plaintiff refused. The trial court entered a judgment allowing a portion of the plaintiff's claim, after deducting the value of forty-nine tons of hay, which the trial court found to have been spoiled.

On appeal, the plaintiff challenged the finding of the trial court concerning the quality of the hay. The supreme court held that it was not feasible for the defendants to make an examination of the hay contained in the stacks, stating that the outside of the haystacks "might be examined, and its condition, to some extent, determined, but that [the condition of the hay] within considerable distance from the outside could hardly be known until the stacks were opened and used." The supreme court held that, by reason of an implied warranty, the plaintiff was liable in damages "to the extent in which such hay fails to correspond with merchantable hay," and, on that item, the defendants were allowed damages.

In the case of *Larson v. Farmers' Warehouse Co.*, 161 Wash. 640, 297 Pac. 753, this court affirmed a judgment rendered in favor of the plaintiff for damages suffered by way of injury to stock occasioned by feeding, to plaintiff's cattle, hay bought from the defendant, which, apparently, contained lead arsenate and poisoned the cattle. Plaintiff relied upon Rem. Rev. Stat., § 5836-15, the defendant contending that it was not liable in law under any implied warranty available to the plaintiff upon the facts of the case, and that, as the hay was not sold under an express warranty, the plaintiff could not recover. The defendant contended that, even though it should appear that the hay contained some poisonous substance,

". . . the presence of which was not caused by the usual method of production, storage or distribution, the presence of which was as apparent to the buyer as to the seller, no implied warranty exists, and the doctrine of *caveat emptor* applies."

While recognizing that the authorities were in conflict, we held

". . . that the better rule is that, under the uniform sales act, and the weight of authority, giving particular consideration to cases decided under that act, appellant is liable as for an implied warranty that the hay sold to respondent was not only of the kind and quality ordered, but was, as a lot, generally free from deleterious substances, poisonous to stock."

We are convinced that the trial court correctly held that respondent was entitled to judgment upon his cross-complaint, and, finding no error in the fixing of the amount awarded to respondent, the judgment appealed from is affirmed.

ROBINSON, MALLERY, GRADY, HAMLEY, and DONWORTH, JJ., concur.

SCHWELLENBACH, J. (dissenting)—There was no express warranty, and respondent, in order to recover, must show an implied warranty. Without wishing to be repetitious, I quote Rem. Rev. Stat., § 5836-15 [P.P.C. § 860-9]:

"Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

There might be sufficient evidence in the record to imply that respondent made known to the seller the particular purpose for which the hay was required. But the record is absolutely devoid of proof that he relied upon the seller's skill or judgment. In fact, the testimony is all to the contrary.

Subdivision (3) of the above statute provides:

"If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed."

Here the respondent was in the business of buying hay and reselling it to various customers. He knew exactly what his customers wanted, and knew how to get it for them. He had dealt with appellant for six or seven years. In the particular transaction he helped load the hay and rejected a large percentage of the bales because they did not suit his purpose. This case is distinguishable from *Larson v. Farmers' Warehouse Co.*, 161 Wash. 640, 297 Pac. 753, relied upon by the majority. There the plaintiff's wife ordered "No. 1 first cutting alfalfa." After it was delivered and fed to the stock it was found to contain lead arsenate. Clearly no examination by the buyer there could possibly have revealed this hidden defect.

There being neither an express nor an implied warranty, the judgment should be reversed and remanded with directions to enter judgment for appellants.

SIMPSON, C. J., and HILL, J., concur with SCHWELLENBACH, J.

———

May 1, 1950. Petition for rehearing denied.