[Civ. No. 27528. Second Dist., Div. Four. Jan. 17, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. 2,624 THIRTY-POUND CANS OF FROZEN EGGS, Defendant; JACK LEVINE, Defendant and Appellant.

A. Brigham Rose for Defendant and Appellant.

Stanley Mosk, Attorney General, and Edward M. Belasco, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—This is an appeal from an order of the superior court entered pursuant to section 26587 of the Health and Safety Code, authorizing the State Department of Public Health to destroy 2,624 30-pound cans of adulterated frozen eggs.

In 1960, appellant, Jack Levine, doing business as Colyton Egg Products and Rancho Egg Farms, had in storage 2,624 30-pound cans of frozen eggs at Terminal Refrigerating Company. On July 7, July 11, and July 12, 1960, after an investigation and a finding that the eggs were decomposed and therefore adulterated (Health & Saf. Code, § 26470, subd. (3)), the Department of Public Health, Bureau of Food and Drug Inspections quarantined all the eggs. (Health & Saf. Code, § 26580.)

On August 14, 1961, after a second investigation and examination, the Department of Public Health again quarantined the eggs for the same reasons they were quarantined on the respective dates in July 1960. On October 4, 1962, but with no further inspection, the eggs were again requarantined. On November 19, 1962, pursuant to Health and Safety Code, section 26586, there was filed in the superior court a "Petition For Leave To Forfeit, Condemn And Destroy Quarantined Eggs." On December 14, 1963, appellant filed an answer setting forth the defense that the proceeding was not validly initiated pursuant to section 26586, and prayed for release of the eggs involved.[1]

[1]On February 11, 1963, appellant filed with this court a petition for writ of prohibition to stay proceedings on the ground that the pro-

I

No serious contention can be made that all the eggs here in question were not contaminated. The evidence in the record amply supports the conclusion that all of said frozen eggs were adulterated within the meaning of sections 26470 and 26580 of the Health and Safety Code, in that tests of the frozen eggs proved them to contain decomposed substances. Although only a portion of the eggs were sampled and found adulterated, such sampling procedure has been upheld as proper and as providing sufficient evidentiary support to uphold the conclusion that all 2,624 30-pound cans of frozen eggs were adulterated. (*People* v. *Two Hundred Thirty-seven 30-Lb. Cans of Whole Hen Eggs* (1937) 23 Cal.App.2d 292 [72 P.2d 929].)

Appellant's arguments as to the skill, experience and training of the agent who made the inspection go only to the weight of his testimony, and were for the trial court and not for us.

II

Section 26586 of the Health and Safety Code provides in part: "When an article is found to be adulterated or misbranded, and is detained or quarantined under this article, *the board shall commence proceedings in the name of the people of the State of California against such article within 90 days after the article is detained or quarantined,* ... At any time prior to the date of the hearing any person in possession of said article, or owner thereof or claimant thereto, may file an answer which may include a prayer for a judgment of release of such article.... *If the board fails to commence proceedings against an article which is detained or quarantined within ninety days after said article is detained or quarantined, as above provided, the board shall immediately release said article from detention or quarantine....*" (Italics added.)

Appellant contends that, since the quarantines in 1961 and 1962 were made on exactly the same grounds as the

ceedings were not validly initiated. Before this court had acted finally on the petition, counsel entered into a stipulation in the trial court that the eggs would not be destroyed until the judgment of the trial court became final. The writ was therefore denied. Since the denial was under our discretionary power and not on the merits, it did not become the law of the case and the validity of the proceeding below is now properly before us on appeal from the order of condemnation.

1960 quarantine, the 1962 quarantine was incompetent to sustain any proceeding under the provisions of section 26586 which limits time to commence a proceeding of this character specifically and unequivocally to 90 days after the article in question had been quarantined. Appellant thus contends that, 91 days after the respective quarantines in July of 1960, the state lost jurisdiction to commence an action under section 26586.

On the other hand, the state contends that there is nothing in the statutes which prohibits it from re-quarantining the same goods on the same grounds as the original quarantine. Therefore, the quarantine in 1962 was valid and proceedings pursuant to section 26586 were timely instituted, thus vesting the court with jurisdiction to make an order pursuant to section 26587 for destruction of the quarantined eggs.

We believe that the present proceeding was validly and timely initiated. We cannot see in what way the appellant has been harmed or prejudiced by the procedure adopted and followed by the state. The statutes give the state three alternative procedures in cases where contaminated food products are discovered. Under section 26590 of the Health and Safety Code, the board or its agents may summarily condemn and destroy the offending articles. Under section 1145b of the Agricultural Code, destruction may take place by order of court, but without prior notice or hearing. The third alternative, and the one herein invoked by the state, is that set forth in section 26586, which provides notice, hearing and an opportunity to contest the charge of contamination. By electing to proceed as it did, the state chose the least drastic method and the one giving the greatest protection to the owner of the questioned product.

In addition, section 26586.5 gives to the possessor, owner or claimant of quarantined property the right, if proceedings under section 26586 are not commenced within 30 days after quarantine, to initiate his own court action for release. Appellant neither resorted to this remedy, nor did he seek to compel the release of his eggs at the end of the 90-day period in 1960, or at the end of the 90-day period in 1961, or at any other time prior to the institution of the present proceeding.

For reasons of his own, appellant was entirely content to allow the eggs to remain where they were for an aggregate

period of over two years even though the restraints applied under the quarantine law had expired. The eggs are as contaminated now as they were in 1960. Appellant is in no position to object to the state taking remedial action to remove them from their present position wherein they are a continuing threat to the health of the community. The public interest involved cannot be defeated by the inaction of the departmental employees.

The order appealed from is affirmed.

Burke, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied February 3, 1964, and appellant's petition for a hearing by the Supreme Court was denied March 11, 1964.