## JOHN P. CAVANAGH *vs.* F. W. WOOLWORTH CO.

Suffolk.    January 9, 1941. — February 26, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, COX, & RONAN, JJ.

*Sale,* Warranty.

The seller of a rubber stopper to be used in confining the contents of a bottle containing a gas-charged or carbonated beverage after the bottle had been opened and until its contents had been consumed, in the absence of an express warranty, could not properly be found to have impliedly warranted more than that in its ordinary use it would withstand pressure from within the bottle to a reasonable extent.

In the absence of evidence of the amount of pressure which, exerted upon a rubber stopper, not defective, by contents remaining in a bottle of carbonated water, caused the stopper to be ejected and to injure one who had purchased it for such use, a finding was not warranted that the stopper was not reasonably fit for the particular purpose, made known to the seller, for which it was sold.

CONTRACT OR TORT.    Writ in the Superior Court dated November 14, 1936.

Before *Brogna,* J., a verdict was returned for the plaintiff on the second count of the declaration in the sum of $2,500.

*C. C. Petersen,* (*John J. Sullivan* with him,) for the defendant.

*J. H. Devine,* (*J. F. Groden* with him,) for the plaintiff.

RONAN, J.    The plaintiff, in the first count of his declaration, alleged a breach of an express warranty made in the sale, by the defendant, of a rubber stopper to be used in bottles containing gas-charged or carbonated beverages; and in the second count, a breach of an implied warranty that the stopper was reasonably fit for the said purpose. The third count was based on negligence. The judge directed a verdict for the defendant upon the third count. The jury found for the defendant upon the first count and for the plaintiff upon the second count. The defendant excepted to the refusal of the judge to grant its motion for a directed verdict on the second count.

There was evidence that the plaintiff told the defendant's clerk that he wanted a stopper that would hold the charge in charged water; that she took "a stopper from one of the bins, stating that it was popular and satisfactory; that she explained it to him and showed him that it was gas tight; that many were sold, and some customers had come back for more; that it was warranted and guaranteed and she said it was gas tight." He purchased the stopper, which was called a "Gas Tite Stopper." On the afternoon of the day of the purchase, which was in August, 1936, he consumed one third to one half of a bottle of sparkling water, inserted the stopper and left the bottle standing in a warm room for twenty minutes and then, as he was putting the bottle into the refrigerator, the stopper blew out of the bottle and injured him.

This rubber stopper had a metal cross bar at the top through which a metal plunger extended to the base of the stopper. The stopper was made longer and narrower by pressing down the plunger as it was inserted into the bottle and then, by releasing the plunger, the stopper expanded toward the sides of the neck of the bottle and was held in place by contact with the inside of the top of the bottle. A stopper similar to the one purchased from the defendant and a bottle similar to that in which it was inserted at the time of the accident were exhibits at the trial, and were used in the argument in this court.

The stopper was not defective. It was a simple contrivance whose mechanical operation could be readily understood by every adult. The stopper became elongated by pressing down the cross bar, which forced the plunger toward the bottom of the stopper and then, when the pressure on the cross bar was released, the plunger returned to its original position and the stopper resumed its ordinary shape.

The testimony showed the amount of gas that had been forced into the sparkling water by its manufacturer, and that the pressure of the gas in the bottle would increase to certain amounts as the temperature of the liquid increased. Agitation of the bottle would liberate the gas

and increase the pressure upon the stopper. There was evidence covering experiments and tests made with a similar stopper and standard bottle like those the plaintiff was using at the time of the accident, which showed that after the stopper was inserted it would come up about one quarter of an inch and would blow out of the bottle if the bottle was shaken. If the pressure exerted upon the stopper by the gas from the carbonated water became greater than the force of the pressure exerted by this soft rubber stopper against the inside of the bottle, then the stopper would be ejected. The plaintiff contends that, if the plunger were stouter, it would have a greater gripping surface upon the inside of the bottle, and that it could therefore withstand a greater pressure than could a stopper like the instant one, which on account of its size and shape had only a small gripping area on the inside of the neck of the bottle near the top. He also contends that, if the end of the stopper were larger, it would withstand a greater pressure from gas exerted upon the sides of the stopper before it would be blown from the bottle.

The plaintiff, although he testified that he had never before used this kind of stopper and that he intended to purchase another type of stopper, must have known that the stopper was intended to be used for a temporary purpose, after a bottle had been opened and until its contents had been consumed. It was a substitute for the cap or stopper with which the bottle had been equipped by the bottler. The stopper was not secured to the bottle by any wires, clamps or other mechanical device, and was not intended to be as permanent and strong as the original cap or stopper, which had been removed when the bottle had first been opened by the plaintiff. It was more convenient to use than to attempt to use again the original cap or stopper or one equipped with some mechanical device. This rubber stopper would keep the gas in the bottle only so long as the gas exerted a force less than that exerted by the stopper upon the bottle. The principle of its operation was obvious. No one could suppose that it was designed to prevent at all events the escape of gas, or that it was

effective to prevent such escape to the extent ordinarily to be expected of a stopper having mechanical attachments. The plaintiff heard a hissing sound which indicated that gas was escaping before the stopper was blown out of the bottle.

It is true that under the sales act, G. L. (Ter. Ed.) c. 106, § 17 (1), an implied warranty that the goods sold shall be reasonably fit for the purpose contemplated by the purchaser arises if the latter, either directly or by implication, makes known to the seller the particular purpose for which the goods are required and relies upon the skill and judgment of the seller to supply goods suitable for that purpose. But the warranty must be reasonably construed in the light of common knowledge in reference to the nature of the article sold. Indeed, the jury, in finding for the defendant upon the first count of the declaration, had refused to find that the defendant's clerk had warranted and guaranteed that the stopper was gas tight. The defendant did not, by virtue of the implied warranty, become an insurer that the stopper could be used with absolute safety. It was not required to be perfectly adapted for its intended use. It need be only reasonably fit for the contemplated purpose. We think it is a matter of common knowledge that, in the ordinary use of such a stopper, it may be reasonably expected to be dislodged from the bottle whenever the pressure of gas becomes too great for it to withstand. *Cadogan* v. *Boston Consolidated Gas Co.* 290 Mass. 496. *Brooks* v. *Sears, Roebuck & Co.* 302 Mass. 184. *Field* v. *Empire Case Goods Co.* 179 App. Div. (N. Y.) 253.

The stopper at the time of the accident was unable to resist the pressure of the gas confined in the bottle, and the plaintiff ought to have anticipated the likelihood that the stopper would be ejected from the bottle if such a situation existed. *Glaser* v. *Seitz,* 35 Misc. (N. Y.) 341. *Bruckel* v. *J. Milhau's Son,* 116 App. Div. (N. Y.) 832. We do not know the exact amount of pressure that the gas was exerting upon the stopper at the time it was ejected from the bottle, and the mere "popping" of this stopper did not show that it was unable to withstand gas pressure up to a reasonable

extent, or, in other words, that it was not reasonably fit for the particular purpose for which such a stopper is used. *Cadogan* v. *Boston Consolidated Gas Co.* 290 Mass. 496. *Mix* v. *Ingersoll Candy Co.* 6 Cal. (2d) 674. *Silva* v. *F. W. Woolworth Co.* 28 Cal. App. (2d) 649. *O'Neill* v. *Dan Cohen Co.* 50 Ohio App. 530.

We need not decide whether notice of the alleged breach of warranty two months after the accident was given to the defendant within a reasonable time. See *Putnam* v. *Great Atlantic & Pacific Tea Co.* 304 Mass. 364. *Bruns* v. *Jordan Marsh Co.* 305 Mass. 437. There was error in not granting the defendant's motion for a directed verdict on the second count.

*Exceptions sustained.*
*Judgment for the defendant.*