HECHT *v.* GIUNTA'S STOP & SHOP MARKET ET AL.

(No. 72-16807—Decided June 3, 1974.)

Shaker Heights Municipal Court.

*Mr. Joseph L. Newman,* for plaintiff.
*Mr. John Shadonix,* for defendants.

ROCKER, J.   Plaintiff's wife purchased a food item known as "Cooked Salami" from defendant, Giunta, a retailer who had obtained the item for resale from defendant, Superior Meat Brands, Inc., a processor and manufacturer of packaged meat products.

Plaintiff opened the sealed package at his home and prepared a sandwich for himself.   Upon taking the first bite into the sandwich, one of his teeth struck a hard object which resulted in severe damage to a tooth to an extent that its replacement with a porcelain bridge would be necessitated.

When plaintiff experienced the injury, he immediately removed the food from his mouth and discovered within the contents a small, hard object which he characterized as a "small stone."

Unfortunately, the object in question was not available at trial, having been lost when it was inadequately af-

fixed to a page of a set of stipulations agreed to by counsel. Defense counsel had examined the object and had agreed to its inclusion along with the stipulations, but without identification of its actual character.

At trial, defense counsel offered one witness, an employee of the meat processing company, who stated that he was knowledgeable of the operations of the manufacturer and of the characteristics of their product known as "Cooked Salami". It was his expert opinion that there were, indeed, items included in the product which might appear to be stones, but were in fact "peppercorns" or small, hard balls of pepper.

The meat processor's witness brought with him samples of peppercorns and samples of their product similar to the type plaintiff had used; the samples illustrating the implanting of peppercorns irregularly through the product, having the appearance of black circular objects.

On cross-examination of defendant's witness, plaintiff counsel suggested that the witness bite into one of the peppercorns he had brought with him. The witness refused with a comment to the effect that it could break a tooth!

From the evidence, circumstantial and direct, the court is of the opinion that plaintiff's injury resulted from contact with a peppercorn. The question then arises as to whether defendants are liable for damages resulting from the injury.

Peppercorn was established at trial as being a natural food item and thus, in consonance with innumerable court decisions, cannot be classified as an adulterant. Many products liability cases involving food products have resulted in judgment for defendants where the injury was caused by contents inherent to the type of product. Illustrative of such cases are those in which oyster shells are found within fried oyster preparations, cherry pits within cherry pie, prune pits in prune butter and a multitude of similar incidents.

One of the leading cases on food products liability in Ohio is that of *Allen* v. *Grafton* (1960), 170 Ohio St. 249, wherein the facts indicated that plaintiff consumed fried

8

oysters which contained a piece of oyster shell, causing serious injury. The court held for defendant and in its decision cited, among other cases, *Cavanagh* v. *F. W. Woolworth Co.* (1941), 308 Mass. 423, 32 N. E. 2d 256, and *Mix* v. *Ingersoll Candy Co.* (1936), 6 Cal. 2d 674, 59 P. 2d 144, the latter of which reads in part, at page 681:

"* * * We have examined a great many cases dealing with the question of the liability of restaurant keepers which arose out of serving of food which was held to be unfit for human consumption, and we have failed to find a single case * * * in which a court has extended the liability based upon an implied warranty of a restaurant keeper to cover the presence in food of bones which are natural to the type of meat served. All of the cases are instances in which the food was found not to be reasonably fit for human consumption, either by reason of the presence of a foreign substance, or an impure and noxious condition of the food itself * * *."

That latter case's conclusions represent the general concept of liability in food cases wherein the item causing injury is inherent in the type of food product.

Interestingly, however, the court in *Allen* v. *Grafton, supra*, also cited from Dickerson, Products Liability and the Food Consumer, 185, Sections 4.2 and 4.3, the following language:

"Insofar as these cases rest on the notion of 'naturalness' in the sense that nothing that is an inherent part of the raw product itself can be a legal defect, they do not hold water. * * *

"* * * The better test of what is legally defective appears to be what consumers customarily expect and guard against. * * *"

In line with that reasoning is it not appropriate to pose the question as to whether a user or purchaser of "Cooked Salami" is expected to anticipate a natural food substance included within its preparation in such a state that it will, as was testified herein, "break a tooth"?

The label of the product in question herein stated that among the contents of the product were "flavorings" and

defendants assert that peppercorn is a form of flavoring, which assertion is not controverted even though it might be more accurate in food terminology to describe it as a spice. In this court's opinion either interpretation of the label's description would avoid consideration of whether the product was misbranded.

As to the description on the label, the more important question is whether it should have contained a warning as to the presence of ingredients such as "peppercorns" which can result in personal injury unless extracted before ingestion.

The subject of a manufacturer's duty to warn is stated briefly in 63 American Jurisprudence 2d 53, Products Liability, Section 42, as follows:

"* * * The rule as to when a manufacturer or seller must warn, or, stated differently, when he will be held negligent if he fails to warn, is this: a manufacturer or seller of a product which, to his actual or constructive knowledge, involves danger to users has a duty to give warning of such danger. * * *"

In the case before this court, plaintiff was not made aware of the potential danger of injury from biting into the peppercorns. There was nothing to indicate that they were an inedible part of the product, or to be more exact, only edible at the risk of injury.

No evidence at trial was offered to indicate that insertion of whole peppercorns in the product was necessary to constitute its acceptance under the generic title of "Cooked Salami" or any other kind of salami meat product. The expert witness at trial did not dispute the fact that usually pepper is added to food products in a ground state, which does not mean, of course, that a manufacturer may not opt to use the solid peppercorn as was done here, whether for reasons of aesthetics, flavoring, or any other reason best known to him.

It is the opinion of this court, however, that where a manufacturer of a food product, with either actual or constructive knowledge, includes within such product ingredients in such a state that they present a hazard known to

the manufacturer, but unanticipated by the consumer, nor brought to the attention of the consumer, such manufacturer and seller of his product will be held liable for resulting injuries.

Strict liability has for many years been the rule rather than the exception in food injury cases, both by statutes and at common law. In more recent times the courts are applying such attitudes toward product liability cases involving products other than foods. The position taken in one such case, *Edwards* v. *Mazor Masterpieces* (C. A. D. C. 1961), 295 F. 2d 547, appears to be in accord with the ruling made herein. The court in *Edwards*, at page 548, held:

"One who supplies a chattel for another to use is liable for bodily harm caused by the intended use if he '(a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied; (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so.' "

While the case referred to involved serious injury during use of a piece of machinery, the logic of the finding by the court is no less persuasive when applied to an article manufactured for human consumption.

Upon the facts and conclusions of law hereinbefore stated and upon the evidence received of injury suffered by plaintiff, judgment is ordered in favor of plaintiff against defendants in the sum of $1,500.00 and costs.

*Judgment for plaintiff.*